UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| 74 PINEHURST LLC; 141 WADSWORTH LLC; 177 WADSWORTH LLC; DINO PANAGOULIAS; DIMOS PANAGOULIAS; VASILIKI PANAGOULIAS; EIGHTY MULBERRY REALTY CORPORATION, <br><br>         Plaintiffs, <br><br>         v. <br><br> STATE OF NEW YORK; NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL; RUTHANNE VISNAUSKAS, individually and in her official capacity as Commissioner of New York State Division of Housing and Community Renewal; CITY OF NEW YORK; NEW YORK CITY RENT GUIDELINES BOARD; DAVID REISS, CECELIA JOZA, ALEX SCHWARTZ, GERMAN TEJEDA, MAY YU, PATTI STONE, J. SCOTT WALSH, LEAH GOODRIDGE, and SHEILA GARCIA, in their official capacities as Chair and Members of the Rent Guidelines Board, <br><br>         Defendants. | No. 19 Civ. 6447 (EK) (RLM) |

**MEMORANDUM OF LAW IN SUPPORT OF
STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*
28 Liberty Street
New York, New York 10005
(212) 416-8651

MICHAEL A. BERG
Assistant Attorney General

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 3

A.   *Overview of the RSL* ................................................................................................ 3
B.   *The History of New York's Rent-Stabilization Laws* ............................................. 6
C.   *Emergency Tenant Protection Act of 1974* ........................................................... 6
D.   *The Introduction of Luxury and High-Income Decontrol* ..................................... 7
E.   *The 2019 Amendments* ............................................................................................ 8
F.   *New York City's Housing Emergency* ................................................................... 10
G.   *Plaintiffs' Claims and Demands for Relief* .......................................................... 11

LEGAL STANDARDS ...................................................................................................... 12

ARGUMENT ...................................................................................................................... 13

I.   THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR A PHYSICAL
     OR REGULATORY TAKING OF PLAINTIFFS' PROPERTY .................................... 13

A.   The Limited Scope Of The Takings Clause ........................................................... 13
B.   The RSL Does Not Effect a Physical Taking of Property ....................................... 14

     1.   A Facial Challenge Must Allege That The Statute Can *Never* Be Enforced
          Constitutionally ............................................................................................... 15

     2.   On Its Face, The RSL Does Not Cause A Physical Taking ............................ 15

     3.   The Complaint Does Not Allege Any Facts Supporting An As-Applied
          Physical Taking Claim .................................................................................... 19

C.   The RSL Does Not Effect a Regulatory Taking of Property .................................. 20

     1.   The Case Law Bars Plaintiffs' Facial Regulatory Taking Claim ................... 20
     2.   The RSL Does Not Result In A Regulatory Taking As Applied to Plaintiffs ........ 23

II.     NEW YORK'S RENT STABILIZATION LAWS DO NOT VIOLATE THE
        CONSTITUTION'S CONTRACT CLAUSE.................................................................. 25

A.      The Contract Clause Does Not Override The Police Power Of The States ........................ 26
B.      Plaintiffs Challenge A Single Provision of the RSL, As Applied To Two Apartments ...... 27
C.      Rent Stabilization Measures Are Permitted Under The Contract Clause ........................... 28
D.      Plaintiffs Do Not Allege A "Substantial Impairment" of Contract Rights ........................ 29

III.    PLAINTIFFS' DUE PROCESS CLAIM FAILS AS A MATTER OF LAW .................... 30

A.      Plaintiffs' Due Process Claim Is Duplicative Of Their Takings Claims ............................. 30
B.      Plaintiffs' Due Process Claim Fails On Its Merits .............................................................. 31

        1.    The RSL Is Subject To Rational Basis Scrutiny .......................................................... 31

C.      The Purposes of the RSL are Valid and Legitimate .............................................................. 32
D.      The RSL Is Rationally Related To The State's Legislative Goals ...................................... 33

IV.     MOST OF PLAINTIFFS' CLAIMS ARE TIME BARRED ........................................... 35

CONCLUSION........................................................................................................................... 35

# **TABLE OF AUTHORITIES**

CASES                                                                                                Page(s)

*1256 Hertel Ave. Assocs., LLC v. Calloway*,
    761 F.3d 252 (2d Cir. 2014)................................................................................ 13-14

*Agins v. City of Tiburon*,
    447 U.S. 255 (1980)............................................................................................22

*Alliance of Auto Mfrs., Inc. v. Currey*,
    984 F. Supp. 3d 705 (2d Cir. 2013) ....................................................................29

*Allied Structural Steel Co. v. Spannaus*,
    438 U.S. 234 (1978)............................................................................................26

*Ambrose v. City of White Plains*,
    No. 10 Civ. 4946 (CS), 2018 WL 1635498 (S.D.N.Y. Apr. 2, 2018), *aff'd*, 779
    F. App'x 765 (2d Cir. 2019) ..............................................................................26

*Annis v. Cnty. of Westchester*,
    136 F.3d 239 (2d Cir. 1998)...............................................................................12

*Appolo Fuels, Inc. v. United States*,
    381 F.3d 1338 (Fed. Cir. 2004)..........................................................................21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................12

*Ass'n of Surrogates & Sup. Ct. Rep'rs v. State of N.Y*,
    940 F.2d 766, 771 (2d Cir. 1991).......................................................................12

*Beatie v. City of N.Y.*,
    123 F.3d 707 (2d Cir. 1997)...............................................................................31

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................12

*Brontel, Ltd. v. City of N.Y.*,
    571 F. Supp. 1065 (S.D.N.Y. 1983)...................................................................28

*Buffalo Teachers Fed'n v. Tobe*,
    464 F.3d 362 (2d Cir. 2006)................................................................ 23-24, 26, 29

*Canadian St. Regis Band of Mohawk Indians v. New York*,
    Nos. 5:82-CV-0783, 5:82-CV-1114, 5:89-cv-0829, 2013 WL 3992830
    (N.D.N.Y. July 23, 2013)....................................................................................4

*CCA Assocs. v. United States*,
667 F.3d 1239 (Fed. Cir. 2011)........................................................................ 32-33

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998)..................................................................................................30

*Community Hous. Improvement Program v. City of N.Y.*,
E.D.N.Y. No. 19 Civ. 4087 (EK) (RLM) ["*CHIP*"]................................................1

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*,
508 U.S. 602 (1993)......................................................................... 21-22, 25, 34

*Cranley v. Nat'l Life Ins. Co. of Vt.*,
318 F.3d 105 (2d Cir. 2003)....................................................................................15

*Doe v. U.S. Sec'y of Transp.*,
No. 17 Civ. 7868 (CS), 2018 WL 6411277 (S.D.N.Y. Dec. 4, 2018), *appeal withdrawn*, No. 19-55, 2019 WL 1531763 (2d Cir. Feb. 25, 2019) ........................34

*Eberhart v. Crozier*,
423 F. App'x 57 (2d Cir. 2011) ..............................................................................12

*EklecCo NewCo LLC v. Town of Clarkstown*,
No. 16 Civ. 6492 (NSR), 2018 WL 3023159 (S.D.N.Y. June 18, 2018) ...............35

*Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal*,
87 N.Y.2d 325 (1995) ......................................................................................3, 6, 32

*Fed. Home Loan Mtge. Corp. v. N.Y.S. Div. of Hous. & Cmty. Renewal*,
83 F.3d 45 (2d Cir. 1996)................................................................................. passim

*Gen. Motors Corp. v. Romein*,
503 U.S. 181 (1992)..................................................................................................34

*Greenburgh Eleven Union Free Sch. Dist. v. Thompson*,
No. 18 CV 67 (VB), 2018 WL 6830865 (S.D.N.Y. Dec. 28, 2018).........................4

*Greystone Hotel Co. v. City of N.Y.*,
13 F. Supp. 2d 524 (S.D.N.Y. 1998)............................................................... passim

*Harmon v. Markus*,
412 F. App'x 420 (2d Cir. 2011) ......................................................16, 24, 29, 31

*Home Bldg. & Loan Ass'n v. Blaisdell*,
290 U.S. 398 (1934)..................................................................................................26

*In re Chateaugay Corp.*,
    53 F.3d 478 (2d Cir. 1995)........................................................................................21

*Israel v. City Rent & Rehab. Admin. of N.Y.*,
    285 F. Supp. 908 (S.D.N.Y. 1968) ............................................................................28

*Jado Assocs., LLC v. Suffolk Cnty. Sewer Dist. No. 4-Smithtown Galleria*,
    No. Civ. 3011 (DRH) (ARL), 2014 WL 2944086 (E.D.N.Y. June 30, 2014)........24

*Jourdain v. N.Y. State Div. of Hous. & Cmty. Renewal*,
    159 A.D.3d 41 (N.Y. App. Div. 2018) ........................................................................5

*Kargman v. Sullivan*,
    582 F.2d 131 (1st Cir. 1978)......................................................................................29

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
    480 U.S. 470 (1987)....................................................................................................23

*Knick v. Twp. of Scott, Pa.*,
    139 S. Ct. 2162 (2019) ...............................................................................................12

*KSLM-Columbus Apartments, Inc. v. N.Y. State Div. of Hous. & Cmty. Renewal*,
    6 A.D.3d 28 (1st Dep't 2004), *mod. on other grounds*, 5 N.Y.3d 303 (2005) ........6

*La Guardia v. Cavanaugh*,
    53 N.Y.2d 67 (1981) ................................................................................................6-7

*Lingle v. Chevron U.S.A. Inc.*,
    544 U.S. 528 (2005)............................................................................................ passim

*Loretto v. Teleprompter Manhattan CATV Corp.*,
    458 U.S. 419 (1982).............................................................................................. 16-18

*Manocherian v. Lenox Hill Hosp.*,
    84 N.Y.2d 385 (1994) ................................................................................................32

*Marcus Brown Holding Co. v. Feldman*,
    256 U.S. 170 (1921) (Holmes, J.) ............................................................................28

*Meriden Tr. & Safe Deposit Co. v. F.D.I.C.*,
    62 F.3d 449 (2d Cir. 1995).........................................................................................24

*Murphy v. N.Y. State Div. of Hous. & Cmty. Renewal*,
    21 N.Y.3d 649 (2013) ..................................................................................................5

*N.Y.S. Club Ass'n v. City of N.Y.*,
    487 U.S. 1 (1988)........................................................................................................13

v

*Nollan v. Cal. Coastal Comm'n*,
    483 U.S. 825 (1987)..................................................................................................25

*Palazzolo v. Rhode Island*,
    533 U.S. 606 (2001)..................................................................................................13

*Penn Central Transportation Co. v. City of New York*,
    438 U.S. 104 (1978)............................................................................................ 24-25

*Pennell v. City of San Jose*,
    485 U.S. 1 (1988)................................................................................................32, 34

*Perez-Dickson v. Bridgeport Bd. of Educ.*,
    No. 19-364-CV, 2020 WL 429077 (2d Cir. Jan. 28, 2020) .....................................25

*Portofino Realty Corp. v. DHCR*,
    Index No. 501554/2014, 2017 WL 7140934 (Sup. Ct. Kings Cnty. May 31,
    2017) ........................................................................................................................30

*Rancho de Calistoga v. City of Calistoga*,
    800 F.3d 1083 (9th Cir. 2015) .................................................................................21

*Rent Stabilization Ass'n of City of N.Y. v. Dinkins*,
    5 F.3d 591 (2d Cir. 1993).............................................................................. passim

*Rent Stabilization Ass'n of New York City, Inc. v. Higgins*,
    83 N.Y.2d 156 (1993) ..................................................................................24, 30, 32

*Roberts v. Tishman Speyer Props., L.P.*,
    62 A.D.3d 71, *aff'd*, 13 N.Y.3d 270 (2009)............................................................7

*Ruston v. Town Bd. for Skaneateles*,
    610 F.3d 55 (2d Cir. 2010)........................................................................................15

*S. Lyme Prop. Owners Ass'n., Inc. v. Town of Old Lyme*,
    539 F. Supp. 2d 524 (D. Conn. 2008) ......................................................................15

*Sanitation and Recycling Indus., Inc. v. City of N.Y.*,
    107 F.3d 985 (2d Cir. 1997)........................................................................... passim

*Southview Assocs., Ltd. v. Bongartz*,
    980 F.2d 84 (2d Cir. 1992)........................................................................................14

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envt'l Prot.*,
    560 U.S. 702 (2010)..................................................................................................31

*Story v. Green*,
    978 F.2d 60 (2d Cir. 1992)........................................................................................12

*Suitum v. Tahoe Regional Planning Agency*,
    520 U.S. 735 (1997)..................................................................................35

*Sykes v. N.Y.S. Office of Children & Family Servs.*,
    No. 18 Civ. 8309 (GHW), 2019 WL 4688608 (S.D.N.Y. Sept. 25, 2019).......................13, 15

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*,
    535 U.S. 302 (2002)............................................................................. 13-15

*Tonwal Realties, Inc. v. Beame*,
    406 F. Supp. 363 (S.D.N.Y. 1976), *aff'd*, 742 F.2d 1439 (2d Cir. 1984).......................... 28-29

*Troy Ltd. v. Renna*,
    727 F.2d 287 (3d Cir. 1984)........................................................................29

*United States v. Salerno*,
    481 U.S. 739 (1987)..................................................................................15

*Usery v. Turner Elkhorn Mining Co.*,
    428 U.S. 1 (1976)....................................................................................34

*W. 95 Hous. Corp. v. New York City Dep't of Hous. Pres. & Dev.*,
    31 F. App'x 19 (2d Cir. 2002) ...............................................................16, 20, 29

*Wellswood Columbia, LLC v. Town of Hebron*,
    No. 3:10 Civ. 1467 (VLB), 2013 WL 356619 (D. Conn. Jan. 29, 2013), *on
    reconsideration in part*, 2013 WL 5435532 (Sept. 30, 2013) ..................................31

*Yee v. City of Escondido, Cal.*,
    503 U.S. 519 (1992)........................................................................... passim

**FEDERAL CONSTITUTIONAL PROVISIONS, STATUTES, AND REGULATIONS**

First Amendment ....................................................................................13

Fifth Amendment ........................................................................... 11-13, 23

Fourteenth Amendment .................................................................... 11-13, 30

U.S. Const.
    art. I, § 10, cl. 1 ......................................................................... 11, 12, 25-26

**FEDERAL STATUTES**

42 U.S.C.
    § 1983.......................................................................................... 11-12

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................1, 12

**STATE CONSTITUTIONAL PROVISIONS, STATUTES, AND REGULATIONS**

Emergency Tenant Protection Act of 1974, ch. 576
    § 4, 1974 N.Y. Laws 1510, 1512–23 ............................................3, 6, 29

Housing Stability and Tenant Protection Act of 2019 (the "2019 Amendments" or
    "HSTPA") ........................................................................................2, 8

Rent Stabilization Law of 1969 .................................................... passim

N.Y. Gen. Bus. Law
    § 352-eeee ....................................................................................9

N.Y. Gen. Oblig. Law
    § 7-108(1-a) .................................................................................10

1946 N.Y. Laws 723 Ch. 274 ....................................................................6
1962 N.Y. Laws 53, 54-56 Ch. 21 § 1(4)-(6) .................................................6
1971 N.Y. Laws 1159, 1161-62 Ch. 371 § 6 ..................................................6
1983 N.Y. Laws 1777, 1778, ch. 403 § 3 .......................................................4
1985 N.Y. Laws 3357, 3358, ch. 888 § 2 ......................................................4
1993 N.Y. Laws ch. 253 ........................................................................7-8
1997 N.Y. Laws ch. 116 ..........................................................................8
2011 N.Y. Laws ch. 97 ...........................................................................8
2015 N.Y. Laws ch. 20 ...........................................................................8
2019 N.Y. Laws ch. 36, pt. I ...............................................................9, 19
2019 N.Y. Laws ch. 36, pt. A ....................................................................8
2019 N.Y. Laws ch. 36, pt. B §§ 1–7 ...........................................................9
2019 N.Y. Laws ch. 36, pt. D .................................................................8-9
2019 N.Y. Laws ch. 36, pt. E ...............................................................10, 27
2019 N.Y. Laws ch. 36, pt. M ..................................................................10
2019 N.Y. Laws ch. 36, pt. N ....................................................................9

N.Y. Real Prop. Tax L.
    Art. 7 ..........................................................................................23
    § 227-f ........................................................................................10
    § 238-a ........................................................................................10
    § 421-a(2)(f) ...................................................................................6

N.Y. Unconsol. Law

§ 8603 .................................................................................................................6

§ 8621 *et seq.* .....................................................................................................3

§§ 8622, 8624, 8625, 8634 ................................................................................9

§ 8623 ............................................................................................................ 10-11

§ 8623(a) ............................................................................................................6

§ 8625(a)(5) .......................................................................................................5

§ 8626 .................................................................................................................4

9 N.Y.C.R.R.

§§ 2520, *et seq.* ...............................................................................................3

§ 2523.5(a) .........................................................................................................5

§ 2523.5(b)(1) ....................................................................................................5

§ 2524.4(a)(2) .....................................................................................................5

§ 2524.5(a)(2) ...................................................................................................18

N.Y.C. Admin. Code

§§ 2520.6(o), 2523.5(b)(1) ................................................................................5

§§ 26-408 ..............................................................................................5, 9, 19

§§ 26–501 to 26–520 .........................................................................................3

§ 26-501 ...............................................................................................3, 6, 32

§ 26-502 ..............................................................................................................6

§ 26-504(c) .........................................................................................................6

§ 26-504.3 ...........................................................................................................9

§ 26-510(a) .........................................................................................................4

§ 26-510(b) .........................................................................................................4

§ 26-510(c) .........................................................................................................4

§ 26-511(14) ............................................................................................10, 27

§ 26-511(b)(9)(b) ............................................................................................18

§ 26-511(c)(6) ..............................................................................................4, 9

§ 26-511(c)(9) .....................................................................................................5

§§ 2520.6(o), 2523.5(b)(1) ................................................................................5

§ 2520.11(e) .....................................................................................................18

§ 2524.3 ..............................................................................................................5

§ 2524.4(c) .........................................................................................................5

§ 2524.5 ........................................................................................................5, 18

## MISCELLANEOUS AUTHORITIES

2018 American Community Survey, U.S. Census Bureau, https://bit.ly/345VkOD
(last accessed Feb. 5, 2020) .............................................................................11

David P. Currie, *The Constitution in the Supreme Court: 1910-1921*, 1985 Duke
L.J. 1111, 1162, n. 103 (1985) ........................................................................28

Defendants the State of New York, the New York State Division of Housing and

Community Renewal ("DHCR"), and DHCR Commissioner RuthAnne Visnauskas (collectively,

"State Defendants"), respectfully submit this memorandum of law in support of their motion to

dismiss the Complaint, filed on November 14, 2019 (ECF No. 1), pursuant to Fed. R. Civ. P.

12(b)(6).

## PRELIMINARY STATEMENT

This is the second action brought in this Court in which New York City apartment

building owners seek to dismantle the 50-year-old regime of rent stabilization that protects more

than one million tenants and their families from unpredictable and unreasonable rent increases.

*See Community Hous. Improvement Program v. City of N.Y.*, E.D.N.Y. No. 19 Civ. 4087 (EK)

(RLM) ["*CHIP*"]. Several of the claims asserted here are identical to those in *CHIP*, and are

subject to dismissal for the same reasons. Plaintiffs' supplemental claims – alleging a Contract

Clause violation and as-applied challenges under the Takings Clause – should also be dismissed.

The New York State Legislature enacted the Rent Stabilization Laws ("RSL") in 1969,

re-imposed rent stabilization in 1974 after a disastrous experiment in deregulation, and most

recently amended the RSL in 2019. Rent stabilization generally applies to buildings constructed

before 1974 with at least six apartments, and later-constructed buildings whose owners elect to

participate in rent stabilization in exchange for tax abatements. The RSL limits the rent increases

that owners are permitted to charge tenants in regulated apartments, and also restricts the

circumstances in which tenants can be evicted. As an incentive to maintain and improve rental

housing, the RSL permits additional rent increases to cover the costs of individual apartment

renovations, major building improvements, and in other specified circumstances.

Rent stabilization is the response of New York State and New York City to a legislatively

declared housing emergency, as evidenced by vacancy rates that persistently fall short of 5 percent of the rental housing market. To address this crisis and its accompanying social ills, the Legislature adopted the RSL for the purposes of protecting and preserving affordable housing; preventing unreasonable and oppressive rents; reducing disruption in the housing market; providing incentives to maintain and improve rental housing; and encouraging new construction by exempting newly constructed buildings from rent stabilization.

The real estate lobby opposed the most recent RSL amendments, signed into law by Governor Andrew Cuomo on June 14, 2019 as part of the Housing Stability and Tenant Protection Act of 2019 (the "2019 Amendments" or "HSTPA"). Having lost the legislative fight, the Plaintiffs – several property owners and managers – seek to strike down not only the 2019 Amendments, but the entire 50-year-old regime of rent stabilization. Plaintiffs proceed on several theories, but none of their claims can survive State Defendants' motion to dismiss.

First, Plaintiffs' physical takings claims fails because the RSL does not result in any physical encroachment upon private property. (*See* Point I.B., *infra*.) Second, their facial regulatory taking claim fails because, under controlling precedent, rent stabilization laws do not deprive owners of use of their property, but merely govern the landlord-tenant relationship. (*See* Point I.C.1, *infra*.) Third, their as-applied regulatory taking claim fails because the Complaint does not allege a government encroachment on Plaintiffs' land or the requisite economic impact. (*See* Point I.C.2, *infra*.) Fourth, Plaintiffs' Contract Clause claim fails (*see* Point II, *infra*), and their substantive due process claim fails because the RSL is rationally related to legitimate state interests (*see* Point III, *infra*). Further, Plaintiffs' challenges to the pre-2019 RSL are time-barred. (*See* Point IV, *infra*.)  Accordingly, Plaintiffs' claims against the State Defendants should be dismissed, with prejudice, in their entirety.

## STATEMENT OF FACTS

### A. Overview of the RSL

The RSL was enacted in 1969 to address a housing crisis arising from New York City's volatile housing market and shortage of affordable rental housing.[1] The RSL aims to ensure a stable and fair rental market by preventing the most egregious forms of rent profiteering that the tight housing market would otherwise encourage. *See* N.Y.C. Admin. Code § 26-501 (finding the RSL necessary "to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices"). Specifically, the law limits how much property owners can increase the rent for certain residential properties each year. *Id.* By regulating rent increases and evictions, the RSL protects tenants, particularly the disabled and elderly, from dislocation, and limits the disruption to neighborhoods and communities that would result from dramatic rent increases and rapid turnover of tenants. *See id.*; *Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal*, 87 N.Y.2d 325, 332 (1995).

The RSL generally applies to buildings with six or more units constructed before 1974, as well as to buildings whose owners opt into the program in exchange for certain public subsidies. *Id.* The RSL currently applies to nearly one million apartments in New York City, which house more than two million people—or about one in three City residents. *See* Selected Initial Findings of the 2017 New York City Housing and Vacancy Survey (Feb. 9, 2018) ("2017 HVS Initial Findings"), https://www1.nyc.gov/assets/hpd/downloads/pdfs/about/2017-hvs-initial-findings.pdf (last

---

[1] The Rent Stabilization Laws are codified in the New York City Administrative Code §§ 26–501 to 26–520, as amended (1969) (rent stabilization within New York City), and the Emergency Tenant Protection Act of 1974, ch. 576, § 4, 1974 N.Y. Laws 1510, 1512–23 (reproduced as amended at N.Y. Unconsol. Law § 8621 *et seq.*) ("ETPA") (rent stabilization outside New York City). Further, regulations promulgated under the ETPA, as amended, are codified in 9 N.Y.C.R.R. §§ 2520, *et seq.* Consistent with the Complaint, these laws and regulations will be referred to in this memorandum as the RSL.

visited Feb. 14, 2020).[2] Owners of rent-stabilized apartments are required to register those apartments annually with DHCR, and to provide information concerning rents and services.[3] *Id.* Property owners are permitted to increase rents by a percentage determined annually by the NYC Rent Guidelines Board, and are permitted additional increases for building improvements and in other circumstances specified by the RSL. *Id.*

The RSL fosters stability in the rental-housing market by limiting the pace of rent increases in regulated apartments. The RSL authorizes the Rent Guidelines Board – a body composed of representatives of property owners, tenants, and the general public – to determine annually the permissible percentage of rent increases for lease renewals. N.Y.C. Admin. Code § 26-510(a). The Board is required to consider, among other things, the cost of living and the economic condition of the residential real-estate industry, including the housing supply, maintenance costs, availability of financing, and vacancy rates. *Id.* § 26-510(b). Owners who believe that the guidelines fail to afford them reasonable income may apply to DHCR for a hardship exemption. *Id.* § 26-511(c)(6). In addition to the annual rent increases, the RSL authorizes additional increases when the owner improves the physical condition of the unit or building. *See* N.Y. Unconsol. Law §§ 26-511.1, 8626; N.Y.C. Admin. Code § 26-511(c)(6).

To ensure the security of a tenant's tenure in an apartment, the RSL generally requires an owner to offer rent-stabilized tenants renewal leases upon the expiration of their current leases.

---

[2] The Court may properly consider HVS data on this motion for two reasons. First, Plaintiffs rely on data from HVS's surveys in the Complaint, *see, e.g.*, Compl. ¶¶ 45, 94, which renders the findings from those surveys integral to the Complaint. *See, e.g.*, *Greenburgh Eleven Union Free Sch. Dist. v. Thompson*, No. 18 CV 67 (VB), 2018 WL 6830865, at * 3 (S.D.N.Y. Dec. 28, 2018). Second, HVS surveys are conducted by the Census Bureau. "The Court can take judicial notice of government statistics," including census figures. *Canadian St. Regis Band of Mohawk Indians v. New York*, Nos. 5:82-CV-0783, 5:82-CV-1114, 5:89-cv-0829 (LEK/TWD), 2013 WL 3992830, at *12 (N.D.N.Y. July 23, 2013) (collecting cases).

[3] DHCR is the "sole administrative agency to administer the regulation of residential rents" under the RSL. *See* 1983 N.Y. Laws 1777, 1778, ch. 403, § 3; *see also* 1985 N.Y. Laws 3357, 3358, ch. 888, § 2.

*See* N.Y. Admin. Code § 26-511(c)(9); 9 N.Y.C.R.R. § 2523.5(a). But when a tenant vacates a regulated apartment, the owner retains discretion to select the next tenant, subject to a limited exception for succession rights. *See* N.Y. Admin. Code §§ 2520.6(o), 2523.5(b)(1).[4] Moreover, nothing in the RSL precludes owners from evicting tenants for cause, such as nonpayment of rent or misconduct, *id.* § 2524.3, or refusing to renew a lease if the apartment is not the tenant's primary residence, *id.* § 2524.4(c). An owner may also withdraw one unit from the rental market during a tenancy for use as his primary residence upon a showing of an immediate and compelling necessity. N.Y. Admin. Code §§ 26-408; 26-511(c)(9)(b). To protect especially vulnerable tenants, the RSL requires an owner seeking to retake an apartment from a disabled person or senior citizen to ensure that the tenant can obtain equivalent or better housing nearby at the same or lower rent. 9 N.Y.C.R.R. § 2524.4(a)(2).

An owner may also withdraw a unit or building from the rental market during a tenancy by demonstrating to DHCR either that they intend to use that unit or building in connection with a business they own and operate, or that redressing substantial building-code violations would be financially impracticable. *Id.* § 2524.5. Moreover, an owner may obtain DHCR's authorization to demolish a building based on proof of financial ability and an approved demolition plan, subject to the requirement that affected tenants are relocated to comparable units or paid a stipend. *Id.*

The RSL also seeks to increase the housing stock in New York City and other affected areas by exempting new construction, N.Y. Unconsol. Law § 8625(a)(5), and by offering tax incentives to owners of newly constructed buildings who opt to offer rent-stabilized units for a

---

[4] In 1987, DHCR promulgated a regulation giving certain family members cohabitating with the tenant of record of a rent-stabilized unit succession rights when the tenant vacates the unit. *See* 9 N.Y.C.R.R. § 2523.5(b)(1). Succession rights "serve the important remedial purpose of preventing dislocation of long-term residents due to the vacatur of the head of household." *Jourdain v. N.Y. State Div. of Hous. & Cmty. Renewal*, 159 A.D.3d 41, 45 (N.Y. App. Div. 2018) (citing *Murphy v. N.Y. State Div. of Hous. & Cmty. Renewal*, 21 N.Y.3d 649, 653 (2013)).

specified period, *see, e.g.*, N.Y.C. Admin. Code § 26-504(c); N.Y. Real Prop. Tax L. § 421-a(2)(f). State law authorizes rent regulation only so long as the City's rental vacancy rate remains at or below five percent. N.Y. Unconsol. Law § 8623(a). The City Council has reassessed the need for continued rent regulation roughly every three years. *See* N.Y.C. Admin. Code § 26-502; *see also* N.Y. Unconsol. Law § 8603.

### B.   The History of New York's Rent-Stabilization Laws

The RSL's balanced approach to regulation of tenancies and rent increases reflects New York's long experience with rent regulation. The State enacted its first rent-control statute in 1946 in response to the housing shortage following World War II and the end of federal wartime rent regulation. *See* Ch. 274, 1946 N.Y. Laws 723; *La Guardia v. Cavanaugh*, 53 N.Y.2d 67, 71 (1981). In 1962, the Legislature authorized New York City and certain other municipalities to enact their own rent regulations. *See* Ch. 21, § 1(4)-(6), 1962 N.Y. Laws 53, 54-56. Under this authority, the New York City Council introduced the prevailing scheme of rent regulation with the Rent Stabilization Law of 1969 (codified as amended at N.Y.C. Admin. Code § 26-501 *et seq.*). The chief aim of the RSL was – and remains – to "ameliorate the dislocations and risk of widespread lack of suitable dwellings that accompany a housing crisis." *Fed. Home Loan Mtge. Corp.*, 87 N.Y.2d at 332 (citation omitted).[5]

### C.   Emergency Tenant Protection Act of 1974

In 1971, the Legislature, in an "experiment with free-market controls," deregulated newly vacated units that had been subject to the RSL. *KSLM-Columbus Apartments, Inc. v. N.Y.S. Div. of Hous. & Cmty. Renewal*, 6 A.D.3d 28, 32 (1st Dep't 2004), *mod. on other grounds*, 5 N.Y.3d 303 (2005); *see* Ch. 371, § 6, 1971 N.Y. Laws 1159, 1161-62. The result was "ever-increasing

---

[5] This action does not implicate the City's separate regime of "rent control," which was enacted in 1962 and applies today only to a small and dwindling number of units.

rents," which were not accompanied by the increase in construction of new housing that the Legislature anticipated. *La Guardia*, 53 N.Y.2d at 74. Three years later, deeming the experiment a failure, the Legislature reaffirmed its commitment to rent stabilization. *See* ETPA; *Roberts v. Tishman Speyer Props., L.P.*, 62 A.D.3d 71, 76 n.4 (1st Dep't), *aff'd*, 13 N.Y.3d 270 (2009).

Before the enactment of the ETPA, Assembly Member Andrew Stein chaired a commission that investigated and prepared a legislative report on the deregulation policies adopted in 1971. *See* Temporary State Comm'n on Living Costs and the Economy of the State of New York, Report on Housing and Rents (Jan. 1974) ("Stein Report"). The Commission found that vacancy decontrol "had [n]o beneficial side effects" and should be abrogated. Stein Report, § A, at 21. In fact, the Commission found that during the three years the decontrol initiatives were in effect, more than 400,000 apartments were removed from the rent regulation system in New York City, rents in decontrolled apartments jumped more than 50%, major capital investment decreased by 50%, new construction was unaffected, and eviction proceedings against tenants rose significantly. *Id.* §§ A, at 3, 14–15, 21; E.I, at 7. As the Commission put it, "[v]acancy decontrol has placed an extreme hardship on the tenants of this state, particularly on the elderly and the poor, in the form of increased rent and insecurity." *Id.* § A, at 21.

Recognizing the troubling results of these aggressive vacancy-decontrol policies, the Legislature rescinded vacancy decontrol for the City's rent-stabilized housing stock in the ETPA.

### D. The Introduction of Luxury and High-Income Decontrol

In 1993, the Legislature enacted the Rent Regulation Reform Act, which instituted the first decontrol initiative since 1971. *See* 1993 N.Y. Laws ch. 253. Specifically, the 1993 legislation introduced a provision commonly called "Luxury Decontrol," under which owners could permanently deregulate apartments that had a legal regulated monthly rent of $2,000 or

higher when they became vacant. *Id.* In 2011, this statutory threshold was raised to $2,500 per month. *See* 2011 N.Y. Laws ch. 97. In 2015, the Legislature raised it to $2,700 a month, adjusted each year thereafter by the same rate as the one-year rent renewal adjustment adopted by the Rent Guidelines Board. *See* 2015 N.Y. Laws ch. 20.

The 1993 legislation also instituted a high-income deregulation provision, which allowed owners to permanently deregulate occupied apartments with rents of $2,000 or more and tenants whose household annual income exceeded $250,000 in each of the prior two years. *See* 1993 N.Y. Laws ch. 253. In 1997, the Legislature reduced the income threshold to $175,000. *See* 1997 N.Y. Laws ch. 116. It also adopted a mandatory formula for rental increases upon vacancy. *Id.* In 2011, these thresholds were increased to $2,500 in rent and a household income of more than $200,000 in each of the two prior years. *See* 2011 N.Y. Laws ch. 97.

E. *The 2019 Amendments*

On June 14, 2019, Governor Cuomo signed into law the Housing Stability and Tenant Protection Act of 2019, which amended the RSL (the "2019 Amendments" or "HSTPA"). The 2019 Amendments were based, in part, on the Legislature's finding that "severe disruption of the rental housing market has occurred and threatens to be exacerbated as a result of the present state of the law in relation to the deregulation of housing accommodations upon vacancy," and that "the situation has permitted speculative and profiteering practices and has brought about the loss of vital and irreplaceable affordable housing for working persons and families." 2019 N.Y. Laws ch. 36, pt. D (S. 6458). The 2019 Amendments to the RSL included:

- *Extension of the RSL Statewide.* The 2019 Amendments permanently codified rent-stabilization and rent-control regulations in New York City, and the ETPA in Nassau, Westchester, and Rockland counties. *See* 2019 N.Y. Laws ch. 36, pt. A (S. 6458). It also created an opt-in program for any city, town, or village in New York satisfying the relevant criteria for rent stabilization. *See id.*, pt. G (S. 6458) (reproduced as amended at N.Y. Unconsol. Law §§ 8622, 8624, 8625, 8634).

- *Elimination of Luxury and High-Income Decontrol.* To mitigate the loss of affordable housing, the 2019 Amendments eliminated Luxury Decontrol and High-Income Decontrol. *See* 2019 N.Y. Sess. Laws ch. 36, Part D (S. 6458). As noted, these provisions – first established in 1993 – permitted an owner to deregulate a unit when the legal regulated rent reached a certain threshold, and the tenant earned over $200,000 a year for two consecutive years. N.Y.C. Admin. Code § 26-504.3 (repealed 2019). Notably, this procedure of excluding high-income households from rent regulation resulted in removing apartments permanently from rent stabilization, regardless of the income of any future tenants. *Id.*

- *Approval Threshold for Cooperative and Condominium Conversions Increased.* The law increased the approval threshold for owners who wish to convert rent-stabilized buildings to condominium or cooperative ownership. Under the 2019 Amendments, these owners must obtain agreements to purchase from 51% of existing tenants, up from 15%. *See* 2019 N.Y. Laws ch. 36, pt. N (S. 6458) (codified at N.Y. Gen. Bus. Law § 352-eeee).

- *Caps Placed on Rent Increases for Individual Apartment Improvements and Major Capital Improvements.* Under the RSL, rent increases are permitted based on owners' investments in Individual Apartment Improvements (IAIs) and building-wide Major Capital Improvements (MCIs). With respect to MCIs, owners can petition DHCR for a rent adjustment equal to the cost of the investment, amortized over a statutorily prescribed period of time. *See* N.Y.C. Admin. Code § 26-511(c)(6). Before the 2019 Amendments, MCI rent increases were limited to 6% of the tenant's rent. Unlike MCIs, IAIs had no cap before the 2019 Amendments. Recognizing that IAIs and MCIs – coupled with vacancy and longevity increases – could quickly result in steep rent increases for tenants, the 2019 Amendments limited MCI rent increase to 2% of the tenant's rent and imposed caps on rent increases for IAIs. *Id.*

- *Longevity and Vacancy Bonuses Repealed.* Before the 2019 Amendments, owners could raise rents by as much as 20% when a rent-regulated unit became vacant. *See* 2019 N.Y. Laws ch. 36, pt. B, §§ 1–7 (S. 6458). The law also permitted owners who had not claimed a vacancy increase in at least eight years to collect an additional increase in rent. *Id.* Recognizing that these vacancy and longevity increases, together with IAIs and MCIs, were resulting in meaningful rent increases being acutely felt by tenants, the 2019 Amendments repealed these policies. *Id.*

- *Limits Placed on "Owner-Use" Exclusion.* Before the 2019 Amendments, owners could take multiple apartments out of rent stabilization for themselves and their family members to use as residences. *See* N.Y.C. Admin. Code § 26-408 (amended by 2019 N.Y. Laws ch. 36, pt. I). Under the 2019 Amendments, owners are limited to claiming "owner use" for one apartment, and must show an "immediate and compelling necessity" to use it as their primary residence. *See* 2019 N.Y. Laws ch. 36, pt. I.

- *Prohibiting Revocation of Preferential Rents.* The maximum rent that a tenant may be charged for a rent-stabilized apartment is known as the "legal rent." Property owners sometimes charge less than the legal rent, a so-called "preferential rent." *See* N.Y.C. Admin. Code § 26-511(14) (amended by 2019 N.Y. Laws ch. 36, pt. E.) Before the 2019 Amendments, a tenant paying a preferential rent could be required, upon renewal of his

lease, to pay the full legal rent—even though that could amount to an increase of several hundred dollars and force tenants out of their apartments. The 2019 Amendments bar this practice, and provide that the rent currently charged to a rent-stabilized tenant, even if less than the legal rent, becomes the basis for any future rent increases charged to that tenant. *See* 2019 N.Y. Laws ch. 36, pt. E. Once the tenant vacates the apartment, however, the owner is permitted to raise the rent to the legal-registered limit. *Id.*

- *Security Deposit and Certain Leasing Procedures Revised*. Under the 2019 Amendments, security deposits for all rental units in New York City – both market-rate and regulated – have been capped at one month's rent, *see* 2019 N.Y. Laws ch. 36, pt. M (codified as amended at N.Y. Gen. Oblig. Law § 7-108(1-a)); application fees for apartments have been capped at $20, *Id.* (codified as amended at N.Y. Real Prop. Law § 238-a); and owners can no longer refuse leases to tenants who have been sued in housing court, *Id.* (codified as amended at N.Y. Real Prop. Law § 227-f).

F.   *New York City's Housing Emergency*

The RSL authorizes the City of New York to maintain its system of rent stabilization based upon a certification by the New York City Council that a housing emergency continues to exist. *See* N.Y. Unconsol. Law § 8623. A housing emergency may be declared when the citywide vacancy rate falls below 5%. *Id.* The most recent Housing Vacancy Survey in 2017 found that the City's vacancy rate was 3.63% – the equivalent of just 79,190 vacant units out of nearly 2.2 million rental units citywide. *See* 2017 HVS Initial Findings, *see infra* 3, at 9, 14.

Under the RSL, New York City must prepare a housing survey every three years to collect information about the inventory and condition of the City's housing supply, and to assess whether there is a continued need for rent regulation. *See* N.Y. Unconsol. Law § 8623. This survey, which is conducted by the Census Bureau, is commonly known as the triennial Housing and Vacancy Survey (HVS).

HVS data establish that rent-stabilized apartments house hundreds of thousands of low-income residents across New York City.[6] *See* 2017 HVS Initial Findings, *see infra* 3, at 3–4. The

_____

[6] Low-income households are defined by the U.S. Department of Housing and Urban Development (HUD) as those earning no more than 80% of the Area Median Income. *See* HUD's Public Housing Program, https://www.hud.gov/topics/rental_assistance/phprog (last visited Feb. 12, 2020). In 2016, the low-income limit in New York City's metropolitan area for a three-person household was $65,250.

2017 HVS survey shows that over 50% of tenants living in rent-stabilized units in 2016 were considered low-income by federal standards; that the household median income of market-rate tenants in Manhattan was double that of rent-regulated tenants; and the median income for rent-stabilized households was $44,560, while tenants in unregulated apartments earned a median income of $67,000. *Id.* The 2017 HVS also shows that the City's housing stock is predominantly renter occupied, with rental units comprising 62.9% of the City's available housing, *id.*, in contrast to the national average of 33.6.[7]

G.  *Plaintiffs' Claims and Demands for Relief*

The Complaint asserts six claims under 42 U.S.C. § 1983 and the U.S. Constitution. Counts I and II allege that the RSL, on its face and as applied to Plaintiffs, effects a physical taking of property in violation of the Takings Clause of the Fifth Amendment. (Compl. at 76-80.) Counts III and IV allege that the RSL, on its face and as applied to Plaintiffs, effects a regulatory taking in violation of the Takings Clause. (Compl. at 81-89.)  Count V alleges that one provision of the RSL, as applied to two apartments owned by Plaintiff 74 Pinehurst LLC ("74 Pinehurst"), interferes with existing leases in violation of the Contract Clause, U.S. Const., art. I, § 10, cl. 1. (Compl. at 89-93.)  Finally, Count VI alleges that the RSL violates the Fourteenth Amendment's Due Process Clause. (Compl. at 93-95.)

The Complaint seeks a declaration that the RSL, as amended by the 2019 Amendments, is unconstitutional and an injunction against its enforcement. (Compl. at 95-96.)  The Complaint further seeks just compensation for the alleged takings of Plaintiffs' property, and damages or restitution for the alleged impairments of Plaintiffs' contractual rights. (Compl. at 95-96.)

---

[7] 2018 American Community Survey, U.S. Census Bureau, https://bit.ly/345VkOD (last accessed Feb. 5, 2020).

## LEGAL STANDARDS

Plaintiffs bring this action under 42 U.S.C. § 1983, which "guarantees a federal forum for claims of unconstitutional treatment at the hands of state officials[.]" *Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162, 2167 (2019). "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a Section 1983 complaint must "plead enough facts to state a claim to relief that is plausible on its face, which standard is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Eberhart v. Crozier*, 423 F. App'x 57, 58 (2d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

To state a claim under the Takings Clause of the Fifth Amendment or the Due Process Clause of the Fourteenth Amendment, Plaintiffs must "allege facts showing that state action deprived them of a protected property interest." *Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992) (citations omitted). To state a claim under the Contract Clause of Article I, Section 10 of the U.S. Constitution, Plaintiffs must plausibly allege that the challenged statute substantially and unforeseeably impaired the Plaintiffs' contract rights. (*See* Point III, *infra* (citing *Sanitation and Recycling Indus., Inc. v. City of N.Y.*, 107 F.3d 985, 993 (2d Cir. 1997)).)

To proceed with a facial challenge to the RSL under any legal theory, Plaintiffs "bear a heavy burden." *Sanitation and Recycling Indus.*, 107 F.3d at 992. Except in a subset of First Amendment cases, a facial challenge is viable only "when plaintiff can demonstrate that the

challenged law 'could never be applied in a valid manner.'" *Id.* (quoting *N.Y.S. Club Ass'n v. City of N.Y.*, 487 U.S. 1, 11 (1988)). "In contrast, an as-applied challenge to a statute's constitutionality requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Sykes v. N.Y.S. Office of Children & Family Servs.*, No. 18 Civ. 8309 (GHW), 2019 WL 4688608, at \*14 (S.D.N.Y. Sept. 25, 2019).

## ARGUMENT

## I.   THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR A PHYSICAL OR REGULATORY TAKING OF PLAINTIFFS' PROPERTY

### A.   The Limited Scope Of The Takings Clause

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (citation omitted); U.S. Const., amend. V. "The Supreme Court has recognized two branches of Takings Clause cases: physical takings and regulatory takings." *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 322 (2002)).

"The paradigmatic taking requiring just compensation," known as a *physical taking*, "is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). *See also Palazzolo*, 533 U.S. at 617 ("The clearest sort of taking occurs when the government encroaches upon or occupies private land for its own proposed use."); *1256 Hertel Ave. Assocs.*, 761 F.3d at 263. "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner[.]" *Tahoe-Sierra*, 535 U.S. at 322. But "the government effects a

physical taking only where it requires the landowner to submit to the physical occupation of his land." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 527 (1992). *Accord Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 94 (2d Cir. 1992). Government action that does not entail a physical occupation, but merely affects the use and value of private property, including rent control and rent stabilization laws, does not result in a physical taking of property. (*See* Point I.B, *infra*.)

By contrast, a *regulatory taking* does not entail a physical occupation, but occurs when "governmental regulation of private property 'goes too far' and is 'tantamount to a direct appropriation or ouster.'" *1256 Hertel Ave. Assocs.*, 761 F.3d at 263 (quoting *Lingle*, 544 U.S. at 537). In determining whether a regulatory taking occurred, courts "must remain cognizant that government regulation – by definition – involves the adjustment of rights for the public good, and that [g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Lingle*, 544 U.S. at 538-39 (citations and internal quotation marks omitted).

Plaintiffs assert that the RSL, on its face and as applied, effects both a physical and regulatory taking of private property. (*See, e.g.,* Compl. ¶¶ 4, 6; *id*. at 76-89.) Neither their physical nor their regulatory taking claims are viable.

### B.     The RSL Does Not Effect a Physical Taking of Property

The Complaint's first claim asserts that on its face, the RSL, as amended in 2019, effects a physical taking of private property. (Compl. at 76-78 (Count One).)  In connection with this claim, Plaintiffs cite provisions of the RSL that require owners to renew rent-stabilized leases, restrict their ability to evict tenants, and bar them, in most circumstances, from using or disposing of their buildings for purposes other than rent-stabilized housing. (*Id*. ¶¶ 194-195.) The Complaint's second claim recycles these same allegations in an attempt to state an as-applied

14

challenge. (Compl. at 78-80 (Count Two).) Both claims should be dismissed.

### 1.   A Facial Challenge Must Allege That The Statute Can *Never* Be Enforced Constitutionally

"A plaintiff making a facial claim faces an uphill battle because it is difficult to demonstrate that mere enactment of a piece of legislation violates the plaintiff's constitutional rights." *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 110 (2d Cir. 2003) (citation omitted). As the Supreme Court has held: "A facial challenge to a legislative Act is … the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

*Salerno's* "no set of circumstances" test "remains the basis for evaluating facial constitutional challenges in the Second Circuit." *Sykes*, 2019 WL 4688608, at *14, n.14. Courts routinely apply that standard in cases asserting facial challenges to rent stabilization, zoning, and other land use laws. *See Rent Stabilization Ass'n of City of N.Y. v. Dinkins*, 5 F.3d 591, 595 (2d Cir. 1993) ["*RSA*"] (reiterating *Salerno* test and holding that complaint did not state a facial challenge under Takings Clause). *See also Ruston v. Town Bd. for Skaneateles,* 610 F.3d 55, 58, n.2 (2d Cir. 2010) (zoning law); *S. Lyme Prop. Owners Ass'n., Inc. v. Town of Old Lyme*, 539 F. Supp. 2d 524, 535 (D. Conn. 2008).

### 2.   On Its Face, The RSL Does Not Cause A Physical Taking

Plaintiffs' claim that the RSL effects a physical taking of property is fundamentally misguided. (Compl. at 76-80.)  While New York's regime of rent stabilization laws imposes restrictions on owners' use of rent-regulated properties, it does not result in the condemnation of any property or its seizure for public use by eminent domain. *Cf. Tahoe-Sierra*, 535 U.S. at 322. Nor does the RSL result in a physical encroachment on any property. *Cf. Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 427 (1982). Thus, Plaintiffs cannot state a claim for a

15

physical taking because the RSL does not "require[] the landowner to submit to the physical occupation of his land." *Yee*, 503 U.S. at 527.

Binding precedent holds that rent control and rent stabilization laws, specifically including the RSL, do not effect a physical taking of property. As the Second Circuit held in rejecting a physical takings challenge to New York's rent regulations, "the RSL regulates land use rather than effecting a physical occupation." *W. 95 Hous. Corp. v. New York City Dep't of Hous. Pres. & Dev.*, 31 F. App'x 19, 21 (2d Cir. 2002). *See also Harmon v. Markus*, 412 F. App'x 420, 422 (2d Cir. 2011) (affirming dismissal of physical takings claim on the ground that "the RSL does not effect permanent physical occupation of the [owners'] property").

Both *West 95 Housing Corp.* and *Harmon* relied on the Supreme Court's analysis in *Yee*, which is equally dispositive of Plaintiffs' physical takings claim here. In *Yee*, mobile home park owners challenged a municipal rent control ordinance and a California statute that "limit[ed] the bases upon which a park owner may terminate a mobile home owner's tenancy." *Yee*, 503 U.S. at 524. They argued that this regime of mobile home regulations effected a physical taking because "what has been transferred from park owner to mobile home owner is no less than a right of physical occupation of the park owner's land." *Id.* at 527.

The Supreme Court rejected the park owners' argument, holding that it "cannot be squared with our cases on physical takings," which occur only when the government "requires the landowner to submit to the physical occupation of his land." *Id.* The local rent controls and state law at issue in *Yee* "authorize[d] no such thing." To the contrary, the park owners "voluntarily rented their land to mobile home owners . . . . Put bluntly, no government has required any physical invasion of petitioners' property. Petitioners' tenants were invited by petitioners, not forced upon them by the government." *Id.* at 528.

16

The same is true in this case. The Complaint is rife with baseless allegations that the RSL prohibits owners of rent-stabilized apartments from excluding the current tenants or their lawful successors from the owners' property. (*See, e.g.*, Compl. ¶ 69.) But these allegations ignore the fact that the owners of rent-stabilized apartments voluntarily open those apartments to tenants subject to the RSL. "[W]here a property owner offers property for rental housing, the Supreme Court has held that government regulation of the rental relationship does not constitute a physical taking." *Fed. Home Loan Mtge. Corp. v. N.Y.S. Div. of Hous. & Cmty. Renewal*, 83 F.3d 45, 47-48 (2d Cir. 1996) ["*FHLMC*"] (citing *Yee*, 503 U.S. at 529).

In *Yee* itself, the Supreme Court rejected the owners' claim that restrictions on their right to evict tenants and terminate their leases violated their constitutionally protected property interests. *Id.* The Court concluded:

> On their face, the state and local laws at issue here merely regulate petitioners' *use* of their land by regulating the relationship between landlord and tenant. "This Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails."

*Id.* at 528-29 (quoting *Loretto*, 458 U.S. at 440).

The Complaint cites several provisions of the RSL in a misguided attempt to establish a physical taking. But the cited provisions merely impose terms and conditions on the landlord-tenant relationship. (*See, e.g.*, Compl. ¶ 50 (alleging that the RSL restricts the right of property owners to refuse to renew rent-stabilized leases so that the owners or their relatives can occupy the apartments); *id.* ¶ 69 (alleging the RSL restricts owners' right to refuse to renew leases to current tenants); *id.* ¶ 81-92 (alleging the RSL generally requires owners to continue using their buildings as rent-stabilized housing, subject to four exceptions that Plaintiffs deem inadequate).) Conspicuously lacking is any allegation that the RSL results in a physical encroachment on

Plaintiffs' property, much less the outright appropriation of their property for public use.

Plaintiffs also incorrectly maintain that the RSL deprives owners of their rights to exclude others, and to possess, dispose, and use their own property. (*See* Compl. ¶¶ 69-80.) That is not true. Among other things, the RSL accords owners of rent-stabilized properties the right to:

- recover possession based on an immediate and compelling necessity for their own use and occupancy, N.Y.C. Admin. Code § 26-511(b)(9)(b);

- remove from rent regulation a building that it is going to demolish after finding tenants suitable housing and paying their relocation expenses, 9 N.Y.C.R.R. § 2524.5(a)(2);

- withdraw a building constructed prior to 1974 from rent stabilization with a showing of substantial rehabilitation, *id.* § 2520.11(e);

- withdraw a unit from rent stabilization for commercial use, *id.* § 2524.5;

- withdraw a building from rent stabilization upon a showing that redressing substantial building-code violations would be financially impracticable, *id.*; and

- apply to DHCR for a hardship exemption on the basis that that the guidelines do not afford them reasonable income, *id.*

Plaintiffs' mischaracterization of the RSL as effecting a permanent physical occupation of their property has no basis in fact or law.

Plaintiffs' reliance on *Loretto*, 458 U.S. at 435, is misplaced, and underscores the deficiencies of their claim. (*See* Compl. ¶¶ 61, 69.) Unlike this action, *Loretto* involved a government-mandated physical intrusion on the owner's property, in the form of a telecommunications cable. *See* 458 U.S. at 435-36. By contrast, the RSL does not mandate any encroachment on Plaintiffs' property. It merely regulates the economic terms of the landlord-tenant relationship. As demonstrated above, the Supreme Court and Second Circuit have repeatedly and consistently held that this type of regulation does not amount to a physical taking. Thus, Plaintiffs' facial physical taking claim fails as a matter of law.

### 3.     The Complaint Does Not Allege Any Facts
### Supporting An As-Applied Physical Taking Claim

Plaintiffs purport to assert an as-applied physical taking challenge to the RSL. (Compl. at 78-80 (Count Two).)  But the Complaint does not allege any facts supporting such a claim. To the contrary, Plaintiffs' purported as-applied claim is a word-for-word copy of their facial claim, except they have substituted the phrase "as applied to Plaintiffs" for the phrase "on its face." (*Compare* Compl. ¶¶ 189-200 (Count One) *with* Compl. ¶¶ 201-212 (Count Two).)

That is patently insufficient. The Complaint does not allege that Defendants have seized the Plaintiffs' properties for public use, taken an easement, asserted the right to occupy their property, or required the presence of any physical structure on Plaintiffs' land or buildings. Accordingly, the Complaint fails to allege the requisite occupation or encroachment to state a physical taking claim on behalf of any Plaintiff. *See Yee*, 503 U.S. at 527 (holding that a physical taking occurs "only" where there is a "physical occupation of [the plaintiff's] land").

Moreover, Plaintiffs cannot plead a physical taking by alleging that the RSL restricts their ability to use their property as they see fit. (*See, e.g.,* Compl. ¶ 63 (alleging that Plaintiff Dino Panagoulias was denied the right to occupy a two-bedroom apartment in his parents' building); ¶ 64 (alleging that non-party Maria Panagoulias is "interested" in moving into her parents' building, but cannot do so because of the RSL[8]); ¶ 79 (alleging that the Panagoulias plaintiffs were legally required to offer a renewal lease to a tenant "to whom they would not have voluntarily offered such a lease").) At most, these allegations describe regulatory impacts of the RSL, which are different in kind from a physical occupation or encroachment.

---

[8] To the contrary, the RSL does not preclude property owners or their relatives from occupying vacant rent-stabilized apartments. The RSL merely prohibits owners from evicting tenants and then occupying the units themselves or allowing family members to move in. *See* RSL § 26-511(c)(9)(b); N.Y.C. Admin. Code § 26-408 (amended by 2019 N.Y. Laws ch. 36, pt. I).

Accordingly, Plaintiffs' second claim should be dismissed.

### C.        The RSL Does Not Effect a Regulatory Taking of Property

The Complaint's third and fourth claims assert that the RSL, on its face and as applied to Plaintiffs, effects a regulatory taking. (*See* Compl. at 81-85 (Count Three); *id.* at 85-89 (Count Four).) Under long-established precedent, neither claim can survive.

#### 1.        The Case Law Bars Plaintiffs' Facial Regulatory Taking Claim

Plaintiffs' facial regulatory taking claim is foreclosed by Second Circuit precedent. *See W. 95 Hous. Corp.*, 31 F. App'x at 21; *FHLMC*, 83 F.3d at 48; *RSA*, 5 F.3d at 595. In *FHLMC*, the plaintiff sought a declaratory judgment that the re-imposition of rent stabilization on previously deregulated units amounted to both a physical and a regulatory taking. *FHLMC*, 83 F.3d at 48. The Second Circuit rejected both claims, finding no support in the case law for "the view that application of the [RSL] constitutes a regulatory taking. Rent stabilization does not deprive FHLMC of economically viable use of the property. Although FHLMC will not profit as much as it would under a market-based system, it may still rent apartments and collect the regulated rents." *Id.* at 48 (citations omitted).

Similarly, in *West 95 Housing Corp.*, the plaintiffs brought a facial regulatory taking challenge to the application of the RSL to apartments constructed under New York's Mitchell-Lama housing program. 31 F. App'x at 20. The Second Circuit held that the RSL did not effect a physical occupation of property, and thus could be held "unconstitutional only if it 'has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole,' the determination of which 'entails complex factual assessments of the purposes and economic effects of government actions.'" *Id.* at 21 (quoting *Yee*, 503 U.S. at 523). The court dismissed the regulatory taking claim because the complaint failed to plead "facts that would support such a

20

'complex factual assessment' of the economic effects of the RSL on *all* Mitchell-Lama property owners." *Id.* (emphasis added). Indeed, the Second Circuit held that "the difficulty of such an assessment suggests that a widely applicable rent control regulation such as the RSL is not susceptible to facial constitutional analysis under the Takings Clause." *Id. See also RSA*, 5 F.3d at 595 (affirming dismissal of facial regulatory taking claim for failure to allege the RSL operated unconstitutionally "in every circumstance").

This longstanding and unbroken line of precedent is controlling here, and compels dismissal of Plaintiffs' facial regulatory taking claim.

Equally unavailing are Plaintiffs' allegations that the RSL diminishes the value of regulated properties and deprives owners of a reasonable return on their investment. (*See, e.g.*, Compl. ¶¶ 93-148.) Courts in this Circuit have consistently recognized that a property owner has "no constitutional right to what it could have received in an unregulated market." *Greystone Hotel Co. v. City of N.Y.*, 13 F. Supp. 2d 524, 528 (S.D.N.Y. 1998) (citing *FHLMC*, 83 F.3d at 48). Indeed, *FHLMC* reaffirmed that an owner of rent-regulated property "'is not guaranteed [a] 'reasonable return' on investment.'" 83 F.3d at 48 (citation omitted). *See also id.* (noting that the owner "may still rent apartments and collect the regulated rents").

In sum, it is well settled that the "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 645 (1993) (citing cases where 75% and 92.5% diminution in value was held insufficient to establish a taking). *See also Rancho de Calistoga v. City of Calistoga*, 800 F.3d 1083, 1090 (9th Cir. 2015); *Appolo Fuels, Inc. v. United States,* 381 F.3d 1338 (Fed. Cir. 2004); *In re Chateaugay Corp.*, 53 F.3d 478, 496 (2d Cir. 1995).

It also bears emphasis that several of the Plaintiffs acquired their properties after the RSL

was enacted.[9] (*See generally* Compl. ¶¶ 12-17.) Having chosen to enter the business of owning

and leasing rent-stabilized apartments, they cannot now assert a takings claim based on the

existence of the underlying statute or the occasional amendment to it. "When a landowner

decides to rent his land to tenants, the government may place ceilings on the rents the landowner

can charge, or require the landowner to accept tenants he does not like, without automatically

having to pay compensation." *Yee*, 503 U.S. at 529 (citations omitted). "[T]hose who do business

in the regulated field cannot object if the legislative scheme is buttressed by subsequent

amendments to achieve the legislative end." *Concrete Pipe & Prods.*, 508 U.S. at 645.

Plaintiffs further allege that the RSL does not achieve the State's policy goals, such as

providing affordable housing to low-income residents, expanding the quantity of available

housing, and improving its quality. (*See, e.g.*, Compl. ¶¶ 159, 161.) But Plaintiffs cannot base a

regulatory taking claim on their disagreement with legislative policy-making choices. *See Lingle*,

544 U.S. at 544 (cautioning courts not "to substitute their predictive judgments for those of

elected legislatures and expert agencies"). In *Lingle*, the Supreme Court clarified language in an

earlier regulatory taking case, which stated that "government regulation of private property

'effects a taking if [such regulation] does not substantially advance legitimate state interests[.]'"

*See id.* (quoting *Agins v. City of Tiburon*, 447 U.S. 255 (1980)). *Lingle* disposed of the

"substantially advances" standard, holding that that such a test – which "asks, in essence,

whether a regulation of private property is *effective* in achieving some legitimate public purpose"

– "is not a valid method of discerning whether private property has been 'taken' for purposes of

---

[9] Even if the Plaintiffs acquired their properties before the advent of rent stabilization in New York, their facial challenge would still fail because they do not (and cannot) allege that the RSL is unconstitutional in all cases, including as applied to owners who purchased their buildings after its enactment. *See RSA*, 5 F.3d at 595 (holding that complaint failed to state a facial challenge to rent stabilization laws where "many," but not all, RSA members allegedly did not "obtain an adequate return" on their investments).

the Fifth Amendment." *Id.* at 542 (italics in original). Thus, Plaintiffs' extensive discussion of the purported ineffectiveness of rent stabilization cannot salvage their regulatory taking claim.

Finally, Plaintiffs' regulatory taking claim is contrary to the plain text of the RSL and, in some instances, contradicts their own allegations. For example, Plaintiffs complain that the RSL grants rent-stabilized tenants a right to renew their leases that "has no endpoint," yet recognize that circumstances exist when an owner can evict a tenant or refuse to renew a lease. (Compl. ¶ 144.) Similarly, Plaintiffs allege the RSL requires them to renew leases to tenants and their lawful successors "indefinitely" (*id.* ¶ 73)*,* yet ignore that successor tenants are subject to removal on the same terms as any other tenant, N.Y. Real. Prop. L. Art. 7. Plaintiffs also allege the RSL's "hardship exception," which permits owners to petition DHCR to charge higher rents than those set by the Rent Guidelines Board, is insufficient. (Compl. ¶¶ 149-158.) But Plaintiffs' facial challenge requires more: a showing that the RSL can never be applied constitutionally. To the extent that their claim is based on the alleged futility of the hardship exception, Plaintiffs must – at a minimum – plausibly plead that no such exceptions are granted. The Complaint does not satisfy this standard. Thus, Plaintiffs' facial regulatory taking claim should be dismissed.

## 2. The RSL Does Not Result In A Regulatory Taking As Applied to Plaintiffs

Plaintiffs (except 177 Wadsworth LLC) assert that the RSL effects a regulatory taking by limiting rent increases. (Compl. at 85-89 (Count Four).)  Plaintiffs further allege that the 2019 Amendments resulted in a taking by changing the rules governing property owners' ability to pass capital improvement costs to tenants. *Id.* Plaintiffs' allegations do not satisfy the legal standard for an as-applied regulatory taking claim.

Plaintiffs bear a "heavy burden" in attempting to plead that the RSL effects a regulatory taking. *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 375 (2d Cir. 2006) (citing *Keystone*

*Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 493 (1987)). To determine whether a

regulatory taking has occurred, courts "engage in essentially *ad hoc*, factual inquiries to

determine in each case whether the challenged property restriction rises to the level of a taking."

*Id.* (citation omitted). "Paramount to the inquiry are the familiar factors set forth" by the

Supreme Court in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).

*Id.* Those factors include "the character of the governmental action, its economic impact, and its

interference with reasonable investment-backed expectations." *Meriden Tr. & Safe Deposit Co.

v. F.D.I.C*., 62 F.3d 449, 454 (2d Cir. 1995) (citations omitted)). Applying these factors, none of

the Plaintiffs has plausibly alleged an as-applied regulatory taking claim.

First, by any measure, the character of the government action here weighs strongly

against any possible regulatory taking claim. The question is whether the RSL "amounts to a

physical invasion or instead merely affects property interests through some public program

adjusting benefits and burdens of economic life to promote the common good." *Jado Assocs.,

LLC v. Suffolk Cnty. Sewer Dist. No. 4-Smithtown Galleria*, No. Civ. 3011 (DRH) (ARL), 2014

WL 2944086, at *6 (E.D.N.Y. June 30, 2014) (quoting *Lingle*, 544 U.S. at 538-39). As shown

above, rent stabilization does not amount to a physical occupation of property, but is a

permissible governmental program adjusting economic relations between owners and tenants.

(*See* Part I.B., *supra*.) *See also FHLMA*, 83 F.3d 45; *Harmon*, 412 Fed. App'x 42; *RSA*, 805 F.

Supp. 159; *Greystone Hotel Co.*, 13 F. Supp. 2d 524; *Rent Stabilization Ass'n of New York City,

Inc. v. Higgins ["Higgins"]*, 83 N.Y.2d 156, 164 (1993).

Second, Plaintiffs have failed to allege the kind or degree of economic impacts necessary

to support a regulatory taking claim. The Complaint does not allege that the RSL deprives

Plaintiffs of all of their properties' economic value. *Cf. Greystone Hotel Co*., 13 F. Supp. 2d at

24

528 (citing *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 834 (1987)). Moreover, Plaintiffs'

contention that the RSL does not permit owners to charge reasonable rents is unsupported by any

alleged facts. (Compl. ¶ 238.) In *Greystone Hotel Co*., 13 F. Supp. 2d at 528, the court held it

was insufficient for the owner to assert that it was "barely making a profit." Here, Plaintiffs do

not even allege that much. Instead, Plaintiffs assert, without explanation or factual support, that

"the RSL's restrictions result in confiscatory rents[.]" (Compl. ¶ 238.) Of course, "unsupported,

conclusory assertion[s] ... cannot render [a] claim plausible." *Perez-Dickson v. Bridgeport Bd. of

Educ.*, No. 19-364-CV, 2020 WL 429077, at *2 (2d Cir. Jan. 28, 2020).

Third, Plaintiffs claim that the 2019 Amendments have interfered with investment-

backed expectations by changing the reimbursement rate and recoupment period for Major

Capital Improvements and Individual Apartment Improvements. (Compl. ¶¶ 233-36.) They

further allege that this results in a reduction in the value of their properties. *Id.* But the Complaint

does not allege facts plausibly suggesting that the 2019 Amendments have made their properties

unprofitable. And as noted above, a property owner has "no constitutional right to what it could

have received in an unregulated market," *Greystone Hotel Co.,* 13 F. Supp. 2d at 528, and the

"mere diminution in the value of property, however serious, is insufficient to demonstrate a

taking." *Concrete Pipe & Prods*, 508 U.S. at 645.

In sum, an analysis of the *Penn Central* factors compel the conclusion that Plaintiffs have

failed to state an as-applied regulatory taking claim. Count Four should therefore be dismissed.

## II.    NEW YORK'S RENT STABILIZATION LAWS DO NOT VIOLATE THE CONSTITUTION'S CONTRACT CLAUSE

The Complaint alleges that in one narrow respect involving preferential rents, the RSL

violates the Contract Clause of the U.S. Constitution. (*See* Compl. at 89-93; U.S. Const., art. I,

§ 10, cl. 1.)  Contrary to Plaintiffs' theory, the controlling case law establishes that rent

stabilization laws are permissible exercises of the State's police power, and do not violate the Contract Clause. That holds true even where, as Plaintiffs allege here, newly enacted rent laws alter the terms of leases entered into before the legislation's effective date. Thus, Plaintiffs' Contract Clause claim is subject to dismissal for failure to state a claim.

### A.   The Contract Clause Does Not Override The Police Power Of The States

The Contract Clause provides that "No State shall … pass any … Law impairing the Obligation of Contracts[.]" U.S. Const., art. I, § 10, cl. 1. The Contract Clause "does not trump the police power of a state to protect the general welfare of its citizens, a power which is 'paramount to any rights under contracts between individuals.'" *Buffalo Teachers Fed'n*, 464 F.3d at 367-68 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240 (1978)). "Rather, courts must accommodate the Contract Clause with the inherent police power of the state 'to safeguard the vital interests of its people.'" *Id.* (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434 (1934)). "Thus, state laws that impair an obligation under a contract do not necessarily give rise to a viable Contracts Clause claim[.]" *Id.*

Moreover, "in reviewing economic and social regulation" under the Contract Clause, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Ass'n of Surrogates & Sup. Ct. Rep'rs v. State of N.Y.*, 940 F.2d 766, 771 (2d Cir. 1991) (citations omitted). In the Second Circuit, courts apply a three-part inquiry to determine whether a statute is valid exercise of the police power or, conversely, a Contract Clause violation. This test asks "(1) whether the contractual impairment is in fact substantial; if so, (2) whether the law serves a significant public purpose, such as remedying a general social or economic problem; and if such a public purpose is demonstrated, (3) whether the means chosen to accomplish this purpose are reasonable and appropriate." *Sanitation and Recycling Indus.*, 107

F.3d at 993. *See also Ambrose v. City of White Plains*, No. 10 Civ. 4946 (CS), 2018 WL

1635498, at *11 (S.D.N.Y. Apr. 2, 2018), *aff'd*, 779 F. App'x 765 (2d Cir. 2019).

As demonstrated in Part II.D, *infra*, Plaintiffs' claim fails at the first step of the inquiry

because, under controlling law, the alleged impairment is not "substantial." Before examining

that factor, it is necessary to recognize the extremely limited scope and nature of Plaintiffs'

Contract Clause claim (Part II.B) and the cases holding that rent control and rent stabilization

laws are permissible exercises of the State's police power (Part III.C).

**B.      Plaintiffs Challenge A Single Provision
          of the RSL, As Applied To Two Apartments**

Plaintiffs ask the Court to strike down, on Contract Clause grounds, a single provision of

the RSL, as amended in 2019. That provision, Part E of the 2019 Amendments, limits certain

rent increases that were due to take effect after June 14, 2019, when the amendments took effect.

(*See* Compl. ¶¶ 249, 253.) The Complaint does not seek to challenge any other provision of the

RSL as a violation of the Contract Clause. (*See* Compl., *passim*.)

In relevant part, Part E of the 2019 Amendments limits the rent increases that a property

owner may charge a tenant under renewal leases that were signed before June 14, 2019, but were

not due to take effect until after that date. Part E provides that the rent under a renewal lease that

takes effect after June 14, 2019 "shall be no more than the rent charged to and paid by the tenant

prior to that renewal, as adjusted by the most recent applicable guidelines increases and any other

increases authorized by law." *See* N.Y.C. Admin. Code § 26-511(14) (amended by 2019 N.Y.

Laws ch. 36, pt. E). This provision applies to all rent-stabilized rents, including preferential rents.

Under prior law, owners were permitted to increase preferential rents by a greater percentage

than that approved by the Rent Stabilization Board, as long as the new rent did not exceed the

maximum legal rent. The Legislature closed that loophole in order to prevent rent increases that

27

could amount to several hundred dollars per month, and could force tenants out of their apartments. (*See* Statement of Facts, Section E, *supra*.)

Moreover, the Contract Clause claim is limited to two apartments owned by 74 Pinehurst LLC. (Compl. ¶¶ 250-51.)[10] No other Plaintiff is alleged to own even one apartment whose lease terms were altered by the enactment of Part E. For that reason alone, the Contract Clause claim must be dismissed as to all Plaintiffs other than 74 Pinehurst. Moreover, with respect to the two apartments owned by 74 Pinehurst, Plaintiffs' claim fails, as demonstrated below.

## C. Rent Stabilization Measures Are Permitted Under The Contract Clause

Courts have routinely rejected challenges to rent regulation under the Contract Clause, holding that the public interest in rent regulations outweighs any purported intrusion on the parties' contractual rights and duties. Thus, in a leading case, a property owner challenged legislation enacted to protect tenants by extending their lease terms. The Supreme Court affirmed the dismissal of the claim, holding that "contracts are made subject to this exercise of the power of the State when otherwise justified, as we have held this to be." *Marcus Brown Holding Co. v. Feldman*, 256 U.S. 170, 198 (1921) (Holmes, J.). *See also* David P. Currie, *The Constitution in the Supreme Court: 1910-1921*, 1985 Duke L.J. 1111, 1162, n.103 (1985) (explaining that *Marcus Brown Holding* "permitted rent control legislation to override an existing contract on the ground that the contract clause had not been mean[t] to interfere with the police power").

It is now "well established that [New York] City's rent control laws do not unconstitutionally impair contract rights." *Brontel, Ltd. v. City of N.Y.*, 571 F. Supp. 1065, 1072 (S.D.N.Y. 1983) (citing *Marcus Brown Holding*, 256 U.S. at 198; *Israel v. City Rent & Rehab.*

---

[10] The Contract Clause claim is an "[a]s applied" challenge. (Compl. ¶ 249.) Plaintiffs do not (and cannot) allege that Part E of the 2019 Amendments is unconstitutional in all circumstances. *See Sanitation and Recycling Indus.*, 107 F.3d at 992-93. For example, Plaintiffs do not claim the Contract Clause bars the State from limiting rent increases in rent-stabilized leases executed after June 14, 2019.

*Admin. of N.Y.*, 285 F. Supp. 908 (S.D.N.Y. 1968); *Tonwal Realties, Inc. v. Beame*, 406 F. Supp. 363, 365 (S.D.N.Y. 1976)), *aff'd*, 742 F.2d 1439 (2d Cir. 1984). *Accord Troy Ltd. v. Renna*, 727 F.2d 287, 299 (3d Cir. 1984); *Kargman v. Sullivan*, 582 F.2d 131, 132 (1st Cir. 1978).

Thus, it is well established that the Contract Clause does not override the public policy concerns supporting rent stabilization. For that reason, Plaintiffs' Contract Clause claim fails.

### D.    Plaintiffs Do Not Allege A "Substantial Impairment" of Contract Rights

In addition, the Complaint fails to allege the first requirement of a Contract Clause claim: the "substantial" impairment of a contractual relationship. *Sanitation and Recycling Indus.*, 107 F.3d at 993. "The primary consideration in determining whether the impairment is substantial is the extent to which reasonable expectations under the contract have been disrupted." *Id.* "Where, as here, the industry has been heavily regulated, and regulation of contracts is therefore foreseeable, a party's ability to prevail on its Contract Clause challenge is greatly diminished." *Alliance of Auto Mfrs.*, 984 F. Supp. 3d at 54 (citation omitted).

74 Pinehurst purchased its apartment building in 2008 – almost 40 years after the advent of rent stabilization in New York City in 1969. (Compl. ¶ 14.) Thus, 74 Pinehurst invested in a business that was subject to extensive government regulation in the public interest – regulations which the courts have repeatedly upheld. *See, e.g., Harmon*, 412 F. App'x at 422; *W. 95 Hous. Corp.*, 31 F. App'x at 21. Moreover, as 74 Pinehurst must have known, the Legislature has periodically amended and updated New York State's rent stabilization regime, including by experimenting with decontrol in 1971, adopting the Emergency Tenant Protection Act in 1974, and enacting luxury decontrols in 1993. (*See* Statement of Facts, Parts A-D, *supra*.) A search of the State Senate's web site shows that numerous bills were introduced to amend the RSL in each of the four sessions prior to 2018-2019, including proposals that were incorporated in the 2019

Amendments. DHCR has also periodically amended the regulations that govern rent-stabilized housing. S*ee Portofino Realty Corp. v. DHCR*, Index No. 501554/2014, 2017 WL 7140934, at *1 (Sup. Ct. Kings Cnty. May 31, 2017); *Higgins*, 83 N.Y.2d at 164.

Thus, it was entirely foreseeable that from time to time, the Legislature would amend and modify the ground rules governing New York City's rent-stabilized housing market. Indeed, it would have been surprising if such changes were not enacted. As a result, Plaintiffs have not plausibly alleged that the 2019 Amendments created an unforeseeable and substantial burden on their contractual rights, as required to state a claim under the Contract Clause. Plaintiffs' Contract Clause claim also fails because, as discussed more fully in Point III, *infra*, the RSL is "a reasonable means to a legitimate public purpose[.]" *See Ass'n of Surrogates & Sup. Ct. Rep'rs*, 940 F.2d at 771 (citation omitted). Accordingly, this claim must be dismissed in its entirety.

## III.    PLAINTIFFS' DUE PROCESS CLAIM FAILS AS A MATTER OF LAW

Plaintiffs allege the RSL violates their property rights under the Due Process Clause of the Fourteenth Amendment. (Compl. ¶¶ 263-75.) The Complaint does not state whether this claim challenges the constitutionality of the RSL on its face or as applied.[11] (*See id.*) But the Complaint alleges no facts suggesting the RSL violated a particular Plaintiff's due process rights with respect to a specific property or tenancy. Thus, it does not state an as-applied challenge.

Conversely, the Complaint contains numerous allegations criticizing the RSL in its entirety, based on the legislation's conception, intent, language, and purported effects on an industry-wide basis. (*See, e.g.*, Compl. ¶ 265 (alleging that the RSL "fails to substantially

---

[11] The Complaint also fails to specify whether Plaintiffs are asserting a procedural or substantive due process claim. (*See* Compl. ¶¶ 263-75.) It is clear from the nature of Plaintiffs' allegations, however, that they are asserting a substantive-due-process claim. Plaintiffs do not challenge the procedural rights afforded to them under the RSL, nor do they allege that they were denied meaningful process. *Id.* Instead, Plaintiffs allege the RSL offends the due process rights of any landlord affected by it. *Id.* That is a substantive-due-process claim. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

advance legitimate governmental interests"); ¶ 270 (alleging that the RSL is "irrational").)

Treating this claim as a facial challenge, it must be dismissed for failure to state a claim.

### A.   Plaintiffs' Due Process Claim Is Duplicative Of Their Takings Claims

As a threshold matter, Plaintiffs cannot maintain a substantive due process claim that

arises out of the same allegations as their claims under the Takings Clause. *See Harmon*, 412 F.

App'x at 423. In *Harmon*, the Second Circuit analyzed (and rejected) the property owners'

Takings Clause challenge to the RSL on its merits, and summarily rejected the owners' due

process claim "as a matter of law." *Id*. As the court explained: "[T]he Due Process Clause cannot

'do the work of the Takings Clause' because '[w]here a particular Amendment provides an

explicit textual source of constitutional protection against a particular sort of government

behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be

the guide for analyzing these claims[.]'" *Id.* (quoting *Stop the Beach Renourishment, Inc. v. Fla.*

*Dep't of Envt'l Prot.,* 560 U.S. 702, 721 (2010) (internal quotation marks and citation omitted)).

*Accord Wellswood Columbia, LLC v. Town of Hebron*, No. 3:10 Civ. 1467 (VLB), 2013 WL

356619, at *4 (D. Conn. Jan. 29, 2013) (dismissing substantive due process claim as duplicative

of Takings Clause claim), *on reconsideration in part*, 2013 WL 5435532 (Sept. 30, 2013).

Here, Plaintiffs assert a substantive due process claim, notwithstanding the Takings

Clause's "explicit textual source of constitutional protection" against the same alleged

governmental action. *Harmon*, 412 F. App'x at 423 (internal citation omitted). Thus, *Harmon*

mandates the summary dismissal of the due process claim.

### B.   Plaintiffs' Due Process Claim Fails On Its Merits

#### 1.   The RSL Is Subject To Rational Basis Scrutiny

Plaintiffs assert that the RSL deprives property owners of "fundamental property rights."

(Compl. ¶ 3.) But that is a mere rhetorical flourish, not an argument for heightened scrutiny of

their due process claim. To the contrary, "[l]egislative acts that do not interfere with fundamental

rights or single out suspect classifications carry with them a strong presumption of

constitutionality and must be upheld if 'rationally related to a legitimate state interest.'" *Beatie v.*

*City of N.Y.*, 123 F.3d 707, 711 (2d Cir. 1997) (citation omitted). *See also Lingle*, 544 U.S. at 545

(rejecting application of heightened scrutiny to due-process property claims).

### C.   The Purposes of the RSL Are Valid and Legitimate

Applying the rational basis standard, the RSL's purposes are clearly valid. "The

legitimate state interest in the RSL and RSC is coping with an acute shortage of available

housing, and preventing unjust and oppressive rents and profiteering." *Greystone Hotel Co.*, 13

F. Supp. 2d at 528. The RSL was enacted to protect tenants by "ameliorat[ing] the dislocations

and risk of widespread lack of suitable dwellings that accompany a housing crisis." *Fed. Home*

*Loan Mortg. Corp.,* 87 N.Y.2d at 332. *Accord Manocherian v. Lenox Hill Hosp.*, 84 N.Y.2d 385,

395 (1994). *See also* N.Y.C. Admin. Code § 26-501 (finding the RSL necessary "to prevent

exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall

profiteering, speculation and other disruptive practices").

Courts have consistently held that these and related goals are legitimate areas of state

regulation. "[T]he purpose of preventing excessive and unreasonable rent increases caused by the

growing shortage of and increasing demand for housing … is a legitimate exercise of [the] police

powers." *Pennell v. City of San Jose*, 485 U.S. 1, 11 (1988) (internal quotation marks and

alteration marks omitted). *See also CCA Assocs. v. United States*, 667 F.3d 1239 (Fed. Cir. 2011)

("Rent control and rent stabilization laws have been almost invariably held to represent

legitimate government acts[.]") (collecting cases); *Greystone Hotel Co.*, 13 F. Supp. 2d at 528.

### D.     The RSL Is Rationally Related To The State's Legislative Goals

Courts have repeatedly held that rent control and stabilization laws, including the RSL, are rational means of achieving permissible legislative purposes. In *Higgins*, 83 N.Y.2d at 174, the New York Court of Appeals found "a close causal nexus between the challenged [rent] regulations and the stated purpose of preventing the eviction and resulting vulnerability to homelessness of the identified beneficiaries[.]" *See also Greystone Hotel Co.*, 13 F. Supp. 2d at 528 (affirming New York's "legitimate state interest" in "coping with an acute shortage of available housing, and preventing unjust and oppressive rents and profiteering").

Plaintiffs assert that the RSL "fails to meet the Due Process Clause's minimum requirement of rationality." (Compl. ¶ 8.) For example, Plaintiffs claim "the RSL is irrational because it is predicated on a five percent 'emergency' vacancy rate" that the RSL allegedly perpetuates by encouraging tenants to remain in their homes. (Compl. ¶ 270; *see also id.* ¶ 8.) But the low vacancy rate in New York City is strong evidence of a continuing housing emergency warranting government intervention. *See, e.g.*, New York State Assembly, Standing Committee on Housing, Transcript of Public Hearing at 21 (May 2, 2019) (Statement of Assistant Commissioner Lucy Joffe, N.Y.C. Dep't of Hous., Pres. & Development). Moreover, rent stabilization does not continue solely because of the low vacancy rate in New York City; the City Council periodically reviews the market to determine whether rent regulation remains in the public interest. Plaintiffs ask this Court to reject not only the State's policy of authorizing rent stabilization, but also the City's determination that the policy remains beneficial.

Plaintiffs also allege that the RSL's benefits are misdirected because, according to a business school professor quoted in *The Daily News*, "nearly 28,000 rent-stabilized units in New York are occupied by households who earn more than $200,000 per year." (Compl. ¶ 179.) If so,

that means more than 972,000 rent-stabilized units in New York (more than 97.2 percent) are occupied by households that earn $200,000 or less annually. The Complaint does not provide any basis to conclude that this outcome reflects an arbitrary or irrational legislative choice.[12]

Plaintiffs also attempt to state a due process claim by suggesting alternative policies that they claim would better advance the goals of the RSL, such as "unrestricted cash grants or vouchers" and zoning amendments. (Compl. ¶ 185.) But courts have repeatedly held that the judicial branch is not designed to sit as a super-legislature reviewing matters of economic policy, but should only ask whether a legislature's policy judgments are rational. *See, e.g., Doe v. U.S. Sec'y of Transp.*, No. 17 Civ. 7868 (CS), 2018 WL 6411277, at *11, n.9 (S.D.N.Y. Dec. 4, 2018) (citation omitted), *appeal withdrawn*, No. 19-55, 2019 WL 1531763 (2d Cir. Feb. 25, 2019). "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15 (1976); *see also Gen. Motors Corp. v. Romein,* 503 U.S. 181, 191 (1992) (observing that economic legislation satisfies due process if it has "a legitimate legislative purpose furthered by rational means"). The RSL easily satisfies this deferential standard of review. *See also Lingle*, 544 U.S. at 545; *Concrete Pipe & Prods.*, 508 U.S. at 639 (holding that in substantive due process cases, "there is no need for mathematical precision in the fit between justification and means"); *Pennell*, 485 U.S. at 11.

Accordingly, Plaintiffs' due process claim fails and should be dismissed.

---

[12] Plaintiffs also attempt to criticize the RSL by citing studies published long before the 2019 Amendments were enacted, and in some instances before the RSL itself was passed into law. (*See, e.g.*, Compl. ¶ 164 (citing a 2007 study of decontrol in Cambridge, Ma.); *id.* ¶ 165 (citing a 1972 study of rent control and rent stabilization in New York City in the late 1960s, and two other studies dating from 1987 and 1990).) These outdated studies have no bearing on whether the RSL, as amended in 2019, is a valid exercise of legislative authority.

## IV.    MOST OF PLAINTIFFS' CLAIMS ARE TIME BARRED

To the extent Plaintiffs challenge provisions of the RSL that were in place before November 14, 2016, those claims are time-barred. *See EklecCo NewCo LLC v. Town of Clarkstown*, No. 16 Civ. 6492 (NSR), 2018 WL 3023159, at *9-10 (S.D.N.Y. June 18, 2018) (holding that three-year statute of limitations applies to Section 1983 claims); ECF No. 1 (Complaint filed Nov. 14, 2019). Facial challenges under the Takings Clause accrue "the moment the challenged regulation or ordinance is passed." *Suitum*, 520 U.S. at 736, n.10. As Plaintiffs acknowledge, rent stabilization has existed in New York for more than 50 years (Compl. ¶ 3), and Plaintiffs have owned and managed properties subject to the RSL throughout that period (*id.* ¶¶ 12-17). Although the Complaint, on its face, primarily targets the 2019 Amendments, Plaintiffs' counsel has represented that this action seeks to strike down the RSL "in its entirety." (*See* ECF No. 23.) But this regulatory scheme has been in place for decades. Any claims challenging aspects of the RSL that existed before the 2019 Amendments accrued well before the three-year limitations period, and should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the action against State Defendants in its entirety, with prejudice, and grant such other and further relief as the Court deems proper.

Dated: New York, New York
        February 14, 2020

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*

By: _____/s/_____

Michael A. Berg
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8651
michael.berg@ag.ny.gov