**UNITED STATES COURT OF APPEALS**
**FOR THE**
**SECOND CIRCUIT**

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of February, two thousand twenty-three,

Before:    Guido Calabresi,
           Barrington D. Parker,
           Susan L. Carney,
                *Circuit Judges.*

_____

74 Pinehurst LLC., 141 Wadsworth LLC, 177 Wadsworth LLC, Dino Panagoulias, Dimos Panagoulias, Vasiliki Panagoulias, Eighty Mulberry Realty Corporation,

          Plaintiffs - Appellants,

New York Tenants and Neighbors, Community Voices Heard, Coalition for the Homeless,

          Intervenors,

v.

State of New York, New York Division of Housing and Community Renewal, RuthAnne Visnauskas, Individually and in her official capacity as Commissioner of New York State Division of Housing and Community Renewal, City of New York, New York City Rent Guidelines Board, David Reiss, In his official capacity as Chair of the Rent Guidelines Board, Alex Schwartz, In his official capacity as a Member of the Rent Guidelines Board, Arpit Gupta, In his official capacity as a Member of the Rent Guidelines Board, Christian Gonzalez-Rivera, in his official capacity as a Member of the Rent Guidelines Board, Christina Derose, In her official capacity as a Member of the Rent Guidelines Board, Robert Ehrlich, in his official capacity as a Member of the Rent Guidelines Board, Christina Smyth, in her official capacity as a Member of the Rent Guidelines Board, Sheila Garcia, in her official capacity as a Member of the Rent Guidelines

**JUDGMENT**

Docket Nos. 21-467(L); 21-558(CON)

Board, and Adan Soltren, in his official capacity as
a Member of the Rent Guidelines Board,

        Defendants - Appellees.

_____

        The appeals in the above captioned case from a judgment of the United States District Court for the Eastern District of New York were argued on the district court's record and the parties' briefs. Upon consideration thereof,

        IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court is AFFIRMED.

        For the Court:
        Catherine O'Hagan Wolfe,
        Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term 2021

Nos. 21-467(L), 21-558(Con)

74 PINEHURST LLC, 141 WADSWORTH LLC, 177 WADSWORTH LLC, DINO
PANAGOULIAS, DIMOS PANAGOULIAS, VASILIKI PANAGOULIAS,
EIGHTY MULBERRY REALTY CORPORATION,

*Plaintiffs-Appellants,*

NEW YORK TENANTS AND NEIGHBORS; COMMUNITY VOICES HEARD;
COALITION FOR THE HOMELESS,

*Intervenors,*

v.

STATE OF NEW YORK, NEW YORK DIVISION OF HOUSING AND
COMMUNITY RENEWAL, RUTHANNE VISNAUSKAS individually and in her
official capacity as Commissioner of New York State Division of Housing and
Community Renewal, CITY OF NEW YORK, NEW YORK CITY RENT
GUIDELINES BOARD, DAVID REISS in his official capacity as Chair of the Rent
Guidelines Board, ALEX SCHWARTZ in his official capacity as a Member of the
Rent Guidelines Board, ARPIT GUPTA in his official capacity as a Member of the
Rent Guidelines Board, CHRISTIAN GONZALEZ-RIVERA in his official
capacity as a Member of the Rent Guidelines Board, CHRISTINA DEROSE in her
official capacity as a Member of the Rent Guidelines Board, ROBERT EHRLICH
in his official capacity as a Member of the Rent Guidelines Board, CHRISTINA
SMYTH in her official capacity as a Member of the Rent Guidelines Board,
SHEILA GARCIA in her official capacity as a Member of the Rent Guidelines

Board, and ADÁN SOLTREN, in his official capacity as a Member of the Rent Guidelines Board,[*]

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Eastern District of New York
No. 19 Civ. 6447 (ERK), Eric R. Komitee, District Judge, Presiding.
(Argued February 16, 2022; Decided February 6, 2023)

Before:     CALABRESI, PARKER, and CARNEY, *Circuit Judges.*

Plaintiffs-Appellants, individuals who own apartment buildings in New York City subject to the relevant Rent Stabilization Law (RSL), appeal from a judgment of the United States District Court for the Eastern District of New York (Komitee, *J.*). The court dismissed the complaint pursuant to Rule 12(b)(6). Plaintiffs-Appellants alleged that the RSL, as amended in 2019, effected, both facially and as applied, an unconstitutional physical and regulatory taking. The district court held that Plaintiffs-Appellants failed to state claims for violations of the Takings Clause or of due process. We **AFFIRM**.

---

KEVIN KING (Mark W. Mosier, Ethan A. Sachs, Covington & Burling LLP, Washington D.C., Jonathan M. Sperling, S. Conrad Scott, Jordan S. Joachim, Covington & Burling LLP, New York, NY, *on the brief*), for *Plaintiffs-Appellants,*

---

[*] Several new members have been added to the Rent Guidelines Board since this case was filed and have thus been automatically substituted for the former members as the defendants in this case pursuant to Fed. R. App. P. 43(c)(2).

ESTER MURDUKHAYEVA, *Deputy Solicitor General for the State of New York*, Letitia James, *Attorney General for the State of New York*, Barbara D. Underwood, *Solicitor General*, Steven C. Wu, *Deputy Solicitor General*, Caroline A. Olsen, *Assistant Solicitor General, Of Counsel*, New York, N.Y., for *Defendant-Appellee RuthAnne Visnauskas,*

CAITLIN J. HALLIGAN (Sean P. Baldwin, Michael Duke, Babak Ghafarzade, Sophie Lipman, *on the brief*, Selendy & Gay PLLC), for *Intervenors,*

CLAUDE S. PLATTON, *Assistant Corporation Counsel for the City of New York*, James E. Johnson, *Corporation Counsel for the City of New York*, Richard Dearing, Jesse A. Townsend, *Of Counsel*, New York, N.Y., for *Defendants-Appellees City of New York, Rent Guidelines Board, David Reiss, Arpit Gupta, Alex Schwarz, Christian Gonzalez-Rivera, Christina DeRose, Robert Ehrlich, Christina Smyth, , Sheila Garcia, Adán Soltren, RuthAnne Visnauskas.*

---

BARRINGTON D. PARKER, Circuit Judge:

Plaintiffs-Appellants are trade associations of managing agents and owners of rental properties in New York City that include rent-stabilized units (collectively, "Pinehurst"). Plaintiffs-Appellants appeal from a judgment of the United States District Court for the Eastern District of New York (Komitee, *J.*)

dismissing their complaint pursuant to Rule 12(b)(6). For the reasons discussed,

we affirm the judgment of the district court.

This case is related to *Community Housing Improvement Program, et al. v. City of New York et al.*, No. 20-3366-cv, __ F.4th __ (2d Cir. Feb. 3, 2023). They were decided in a consolidated opinion in the district court and heard concurrently at oral argument before our Court on February 16, 2022. Many of the issues in this case are addressed in our opinion in *Community Housing*. Accordingly, this opinion addresses in detail only those issues that are unique to this case, namely Pinehurst's claim that the RSL effects an as-applied physical and regulatory taking.

## PROCEDURAL HISTORY

Five months after New York's Rent Stabilization Law ("RSL") was amended by the Housing Stability and Tenant Protection Act of 2019 (the "HSTPA"), Pinehurst sued seeking to have the RSL as amended declared unconstitutional. Pinehurst brought claims against the City of New York, the Rent Guidelines Board (as well as its chair and members), the State of New York, and the New York State Division of Housing and Community Renewal (as well as its commissioner).

Pinehurst alleged that the amendments effected, facially and as applied, physical and regulatory takings in violation of the Takings Clause of the Fifth Amendment, and that they violated the Fourteenth Amendment's Due Process Clause. They further alleged that the state defendants were not shielded from liability by sovereign immunity.

The district court granted the motion to dismiss, concluding that no physical or regulatory taking had occurred and that the RSL did not violate Due Process. This appeal followed. We review *de novo* the district court's dismissal for failure to state a claim, accepting all well-pleaded factual allegations as true and drawing all inferences in favor of the non-moving party. Fed. R. Civ. P. 12(b)(6); *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).

## DISCUSSION

## I.

Pinehurst has leveled facial physical and regulatory taking challenges to the RSL. These claims fail for the same reasons we explain in *Community Housing.* To prevail on facial challenges, a plaintiff must "establish that no set of circumstances exists under which the [challenged] Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In other words, the plaintiff must show that the statute "is

unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Rep. Party*, 552 U.S. 442, 449 (2008); *see generally Community Housing*, No. 20-3366-cv, __ F.4th __.[1] Facial challenges to the RSL have regularly been unsuccessful. *See Rent Stabilization Ass'n of the City of N.Y. v. Dinkins*, 5 F.3d 591, 595 (2d Cir. 1993); *W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 31 F. App'x 19, 21 (2d Cir. 2002). This case is no exception.

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amends. V, XIV, § 1. That requirement applies to all physical appropriations of property by the government. *See Horne v. Dep't of Agriculture*, 576 U.S. 350, 360 (2015). When the government effects a physical appropriation of private property for itself or another—whether by law, regulation, or another means—a *per se* physical taking has occurred. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021). The government may also effect a physical taking by granting a third party the right to invade property closed to the public. *See, e.g., Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (holding that a statute requiring

---

[1] As we further discuss in *Community Housing*, Pinehurst's contention that subsequent cases, including *United States v. Stevens*, have modified the standard for facial claims articulated in *Salerno*, is without merit. *See Community Housing*, slip op. at. 16–18, __ F.4th at __.

landlords to permit cable companies to install equipment on the landlords' properties constituted a *per se* physical taking). However, where—as here—property owners *voluntarily* invite third parties to use their properties, regulations of those properties are "readily distinguishable" from those that compel invasions of properties closed to the public. *Cedar Point*, 141 S. Ct. at 2077. As the Supreme Court made pellucid in *Yee v. City of Escondido*, when "a landowner decides to rent his land to tenants" the States "have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." 503 U.S. 519, 528–29; *see also Loretto*, 458 U.S. at 440 ("This Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails."); *Home Building & Loan Ass'n v. Blaisdell*, 290 U.S. 398 (1934); *Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242 (1922). The numerous cases that affirm the validity of rent control statutes are the necessary result of this long line of consistent authority. *See, e.g., Bowles v. Willingham*, 321 U.S. 503 (1944); *Block v. Hirsh*, 256 U.S. 135 (1921).

Moreover, the RSL does not compel landlords "to refrain in perpetuity from terminating a tenancy." *Yee*, 503 U.S. at 528. Instead, the statute sets forth several bases on which a landlord may terminate a tenant's lease, such as for failing to pay rent, creating a nuisance, violating the lease, or using the property for illegal purposes. 9 NYCRR § 2524.3. *See Community Housing*, No. 20-3366-cv, slip. op at 23–24, __ F.4th at __ (collecting cases). In light of this well settled case law that affords municipalities considerable flexibility in addressing landlord-tenant relationships, we conclude that Pinehurst has not plausibly alleged that the RSL effects a taking in all of its applications and that it is thus facially unconstitutional.

All but one of the Pinehurst plaintiffs also claim that the rent stabilization scheme, as applied to their properties, works a physical taking. Pinehurst claims that landlords have been compelled to offer renewal leases to at least one tenant to whom they would not voluntarily lease an apartment, that successor rights force landlords to continue leasing to a deceased tenant's relatives, and that they have been prevented from reclaiming an apartment for personal use. Through these restrictions, Pinehurst contends, the RSL compels landlords, against their objections, to continue renting their properties to unwelcome tenants, thereby constituting an as-applied physical taking. We disagree.

Plaintiffs have not sufficiently pled that the RSL imposes, as applied, a physical taking. To begin, no plaintiff alleges that the RSL forces them to place their properties into the regulated housing market, and it is well-settled that once an owner "decides to rent his land to tenants, the government . . . may require the landowner to accept tenants he does not like." *Yee,* 503 U.S. at 526–28. *See also Heart of Atlanta Motel Inc. v. United States,* 379 U.S. 241, 259–60 (1964). Moreover, none of the Pinehurst plaintiffs who raise as-applied claims have alleged that they have exhausted all the mechanisms contemplated by the RSL that would allow a landlord to evict current tenants. Because, as pled, landlords may yet succeed in evicting current tenants, we cannot say that the RSL "compel[s] a landlord over objection to rent his property or to refrain in perpetuity from terminating a tenancy." *Yee,* 503 U.S. at 528. Without allegations that the RSL has compelled a physical invasion of the property of any of the plaintiffs raising an as-applied claim, Pinehurst has failed sufficiently to plead an as-applied physical taking.

## II.

### A.

We also reject Pinehurst's contention that the RSL effects, facially or as applied, a regulatory taking, which occurs when a regulation goes "too far" in

restricting a landowner's ability to use his own property. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). The Court has "generally eschewed any set formula for determining how far is too far, choosing instead to engage in essentially ad hoc, factual inquiries . . . preferring to examine a number of factors rather than a simple mathematically precise formula." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 326 (2002) (internal quotation marks omitted). In determining whether a use restriction effects a regulatory taking, we apply the balancing test set forth in *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978), which considers, among other factors, a regulation's impact, its interference with reasonable investment-backed expectations, and the character of the government action.

Pinehurst's facial regulatory taking claim fails for the same reason as did the facial regulatory taking claim in *Community Housing*: it fails plausibly to allege that "no set of circumstances exists under which the [RSL] would be valid." *See Rent Stabilization Ass'n*, 5 F.3d at 595 (internal quotation marks omitted); *see also Community Housing*, No. 20-3366-cv, slip. op at 14, __ F. 4th at __. The economic impact of the RSL on the various landlords cannot be ascertained on a collective basis, as it necessarily varies among properties. Some landlords might have been

harmed while others might not have been. It is not possible to generalize as to who was harmed, when, and to what extent. Furthermore, landlords who were not harmed would have no viable claims for relief. This variation necessarily means that Pinehurst cannot establish that the RSL can never be applied constitutionally. Accordingly, we affirm the district court's determination that Pinehurst's facial challenge fails.

**B.**

In addition to a facial regulatory takings challenge, some Pinehurst appellants brought as-applied challenges to the RSL. The City moved to dismiss these challenges, and the district court granted the motion on the grounds that "by the time these Plaintiffs invested, the RSL had been amended multiple times, and a reasonable investor would have understood it could change again." *Community Housing Improvement Program v. City of New York*, 492 F. Supp. 3d 33, 51 (E.D.N.Y. 2020). The district court was correct.

As a threshold matter, we turn to the Intervenors' argument that the as-applied regulatory takings claims are unripe because 74 Pinehurst LLC and 141 Wadsworth LLC failed to avail themselves of the remedial provisions in the RSL that permitted them to apply for hardship exemptions. *See* N.Y.C. Admin. Code

§ 26-511(c)(6)–(6-a); 23 N.Y. Unconsol. Laws § 8626(d)(4)–(5). We agree. The Rent Guidelines Board has discretion to grant hardship exemptions to allow landlords to raise rents above the RSL's permitted rent increases based on various criteria, such as "a finding by the commissioner that such guideline increases are not sufficient to enable the owner to maintain an annual gross rent income for such building which exceeds the annual operating expenses of such building by a sum equal to at least five percent of such gross rent." N.Y.C. Admin. Code § 26-511(c)(6-a). Pinehurst does not allege that it has availed itself of any of the hardship exemptions.

The Supreme Court has made clear that "a plaintiff's failure to properly pursue administrative procedures may render a claim unripe if avenues still remain for the government to clarify or change its decision," including where the plaintiff has "an opportunity to seek a variance." *Pakdel v. City and County of San Francisco*, 141 S. Ct. 2226, 2231 (2021). While a property owner "has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it," *Knick v. Township of Scott*, 139 S. Ct. 2162, 2170 (2019), a claim that a regulation effects an as-applied taking cannot be properly adjudicated until there is "no question . . . about how the regulations at issue apply

to the particular [property] in question," *Suitium v. Tahoe Regional Planning Agency*, 520 U.S. 725, 739 (1997); *see also Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 294 (2d Cir. 2022). The claims in *Pakdel* were ripe because the plaintiffs had sought an exemption and there was "no question about the city's position" denying it. *Pakdel*, 141 S. Ct. at 2230. Here, by contrast, the as-applied challengers have not sought exemptions. Instead, they speculate that the hardship provisions offer economic relief "in theory" but practically "result in few applications . . . being granted." Speculation of this sort is insufficient under *Pakdel*. Accordingly, we hold that Pinehurst's regulatory takings claims are unripe where, as here, the relevant parties have failed to pursue available administrative relief.

That said, even if the as-applied challengers' regulatory takings claims were ripe, these claims would nevertheless fail on the merits. *Penn Central* supplies the framework for considering regulatory takings claims. The case instructs courts to engage in a flexible, "ad hoc, factual inquiry "focused on "several factors that have particular significance." 438 U.S. at 124. Three of these factors are: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) "the character of the governmental action." *Id.* Appellants have failed to

sufficiently allege that the *Penn Central* factors establish that, as applied to them, the RSL is unconstitutional.[2]

**1.**

We turn first to the alleged economic impact of the RSL on 74 Pinehurst and 141 Wadsworth. The Complaint alleges that 74 Pinehurst's and 141 Wadsworth's Properties decreased in value "by 20 to 40 percent" after the 2019 amendments to the RSL. This allegation, though, does not insulate these parties from "the legion of cases that have upheld regulations which severely diminished the value of commercial property." *Park Ave. Tower Assocs. v. City of New York*, 746 F.2d 135, 139–40 (2d Cir. 1984) (collecting cases rejecting takings claims under the *Penn Central* framework despite diminutions in value of 75 to 90 percent); *accord Pulte Home Corp. v. Montgomery County*, 909 F.3d 685, 696 (4th Cir. 2018) (no takings violation at 83 percent diminution); *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013) (no takings violation at 81 percent diminution); *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508

---

[2] The remaining plaintiffs either did not allege as-applied claims (177 Wadsworth LLC) or chose to voluntarily dismiss their as-applied claims with prejudice (Eight Mulberry Realty Corp. and the Panagoulias family). The latter's as-applied claims are not at issue in this appeal.

U.S. 602, 645 (1993) ("[M]ere diminution in the value of property, however serious, is insufficient to demonstrate a taking.").

Furthermore, the as-applied challengers have not plausibly alleged that the economic impact factor tilts in their favor. They allege that the RSL requires "below-market rates," that it locks in "preferential rents for the life of a tenancy," and that it "jeopardizes" the ability of 74 Pinehurst's and 141 Wadsworth's owners to refinance their mortgages in the future. We have repeatedly "rejected the notion that loss of profit—much less loss of a reasonable return—alone could constitute a taking." *Park Ave. Tower*, 746 F.2d at 139.

The as-applied challengers fail to allege any specific impact on profit or revenue, much less that the RSL has rendered any property unusable for permitted purposes or otherwise unmarketable. Their generalized allegations about being required to accept below-market and preferential rents are not sufficient.

Moreover, because neither 74 Pinehurst nor 141 Wadsworth have sought any hardship exemptions that, if approved, could limit the alleged loss of profit revenue, we cannot ascertain the economic impact of the RSL. A hardship exemption or waiver may be designed, precisely, to balance out a regulation's potential detrimental impact on some landowners. The RSL's restrictions and

exemptions operate as interconnected and complementary elements of the regulatory scheme. Since plaintiffs have not pursued any exemptions, we cannot assess whether the RSL does, in fact, lead to a gross positive or negative economic impact on them.

## 2.

Neither 74 Pinehurst nor 141 Wadsworth can show that the RSL thwarted their reasonable, investment backed expectations. The reasonableness of owners' expectations ensures that compensation is limited to those owners who can demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime. *Allen v. Cuomo*, 100 F.3d 253, 262 (2d Cir. 1996). "[T]he critical time for considering investment-backed expectations is the time a property is acquired, not the time the challenged regulation is enacted." *Meriden Tr. & Safe Deposit Co. v. F.D.I.C.*, 62 F.3d 449, 454 (2d Cir. 1995). 141 Wadsworth acquired its building in 2003, while 74 Pinehurst purchased its property in 2008. The key question is whether, in 2003 and 2008, respectively, 141 Wadsworth or 74 Pinehurst could have expected the RSL to include the type of restrictions they now claim constitute a taking.

We agree with the district court and hold that any investor could reasonably expect limits on the use of rental properties, such as those as provided by the RSL.

The City's modern regime of rent regulations was introduced in 1969 and has since been amended several times. In 1971, for example, the State passed the Emergency Tenant Protection Act ("ETPA"), which permits the City to renew the protections of the RSL when it declares a "housing emergency" based upon a set of statutory criteria. 23 N.Y. Unconsol. Law § 8623.a (McKinney). Later, in the 1980s, protections were extended to tenants' successors.[3] In 1993, the law was again amended to permit the deregulation of apartments that either housed high-income tenants or became vacant.[4] Recently, the RSL was amended by the HSTPA,[5] which was passed in "response to an ongoing housing shortage crisis, as evidenced by an extremely low vacancy rate" that caused tenants to "struggle to secure safe, affordable housing" and municipalities to "struggle to protect their regulated housing stock." Sponsor's Mem., 2019 N.Y. Laws ch. 36. Ever since 1969, some version of the RSL has impacted landlords' ability to raise rents, to decline to renew leases, and to evict tenants. Since its initial enactment, the legislature has

---

[3] 9 NYCRR 2520.6 (1987).

[4] *See generally Roberts v. Tishman Speyer Props.*, 918 N.E.2d 900, 902 (N.Y. 2009).

[5] 2019 N.Y. Laws ch. 36, available at https://perma.cc/TH4B5WNQ.

adjusted the RSL, changing the provisions for rent increases, non-renewals of leases, and evictions. Regardless of the particular blend of features in place at those times, in both 2003 and 2008, a reasonable investor, like 74 Pinehurst and 141 Wadsworth, would have anticipated their rental properties would be subject to regulations, and that those regulations in the RSL could change yet again.

Importantly, over time, the RSL has been amended in ways that, at times, favored landlords, and, at other times, tenants. These varying changes mean that, on occasion, a savvy investor might receive a windfall because subsequent regulations reduced restrictions on rent-stabilized units. Other investors might suffer losses because regulations become tighter. Still others would receive returns that existed when they purchased their properties, because regulations remained essentially unchanged. All of this means that, for decades New York landlords have taken a calculated risk when they entered the rental market. In such circumstances, the fact that this risk then results in a loss does not constitute a taking.

The as-applied challengers further contend that the RSL, as amended in 2019, prevents them from earning a reasonable rate of return. But given the multiple past amendments to the RSL, and as discussed above, it would not have

been reasonable for these individuals "to expect that the regulated rate [of rent increases] would track a given figure, or that the criteria for decontrol and rate increases would remain static." *Community Housing*, 492 F. Supp. 3d at 51. Both 74 Pinehurst LLC and 141 Wadsworth voluntarily elected to enter New York City's rental housing market, which has been subject to an ever-evolving scheme of rent regulation since at least World War II. Given that decision, they cannot claim that their reasonable expectations have been defeated when "the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." *See Concrete Pipe & Prods. of Cal., Inc*, 508 U.S. at 645 (internal quotation marks omitted). Accordingly, we hold that the investment-backed expectations factor fails to support the as-applied regulatory takings challenge.

**3.**

As the last step in our *Penn Central* analysis, we consider the character of the regulation at issue. A regulatory taking "may more readily be found when the interference with property can be characterized as a physical invasion by government." *Penn Central*, 438 U.S. at 124. The Supreme Court has instructed that in analyzing the "character" of the governmental action, courts should focus on the extent to which a regulation was "enacted solely for the benefit of private

parties" as opposed to a legislative desire to serve "important public interests." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485–86 (1987). The character of the government action in *Penn Central*, for example, cut against a finding that a taking had occurred because the law was part of a "comprehensive plan to preserve structures of historic or aesthetic interest" and applied to hundreds of sites. 438 U.S. at 132.

The character of the regulation does not change whether the challenge is as applied or facial. *Community Housing*, No. 20-3366-cv, slip op. at 31–33, __ F. 4th at __. There, we noted that the RSL is part of a comprehensive regulatory regime that governs nearly one million housing units in the City. *Id.* Like the broad public interests at issue in *Penn Central* itself, here, the legislature has determined that the RSL is necessary to prevent "serious threats to the public health, safety, and general welfare." N.Y.C. Admin. Code § 26-501. No one can seriously contend that these are not important public interests and courts are not in the business of second-guessing legislative determinations such as this one. The fact that the RSL affects landlords unevenly is of no moment. As the *Penn Central* Court noted, "[l]egislation designed to promote the general welfare commonly burdens some more than others." 438 U.S. at 133.

Because the balance of factors under *Penn Central* tilts strongly against the conclusion that the RSL effects a regulatory taking as applied, we affirm the dismissal of that claim.[6]

## III.

Next, we turn to Pinehurst's contention that the RSL violates due process. In *Community Housing* we held that it does not. *See Community Housing*, slip op. at 34–36, __ F. 4th at __. There, we held that the Due Process Clause cannot "do the work of the Takings Clause" because "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 720–21 (2010) (cleaned up); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Harmon v. Markus*, 412 F. App'x 420, 423 (2d Cir. 2011).

---

[6] Because Pinehurst's as-applied regulatory claims fail, their claims the RSL facially effects a regulatory taking also necessarily fail, as they cannot "establish that no set of circumstances exists under which the statute would be valid." *United States v. Decastro*, 682 F.3d 160, 163 (2d Cir. 2012) (internal quotation marks omitted). *See supra* at 5; *see also Community Housing*, No. 20-3366-cv, slip op. at 14, 26–34, __ F. 4th at __.

Furthermore, even if a due process challenge were available, it would be subject to rational basis review. *See Pennell v. City of San Jose*, 485 U.S. 1, 11–12 (1988). To survive under that standard, a law need only be "rationally related to legitimate government interests." *Washington v. Glucksberg*, 521 U. S. 702, 728 (1997). Rational basis review is typically easy to satisfy, because "[t]he Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.*" Vance v. Bradley*, 440 U.S. 93, 97 (1979)**.**

When reviewing a statute under rational basis, accordingly, we consider two factors. *First*, "where there are plausible reasons for Congress' action, our inquiry is at an end." *See, e.g.*, *F.C.C. v. Breach Communications, Inc.*, 508 U.S. 307, 313–14 (internal quotation marks omitted). Rational basis review is not a mechanism for judges to second guess legislative judgments—even when, as here, they conflict with the opinions of some experts. *Second*, a law survives rational basis review if *any* of its justifications is valid. *See Preseault v. I.C.C.*, 494 U.S. 1, 18 (1990). Appellants' challenge does not succeed under this test.

Among other reasons, the RSL was enacted to permit low- and moderate-income people to reside in New York City—when they otherwise could not afford to do so. *See* N.Y.C. Admin. Code § 26-501. It is beyond dispute that neighborhood continuity and stability are valid bases for enacting a law. *See Nordlinger v. Hahn*, 505 U.S. 1, 12 (1992). Pinehurst's Due Process challenge thus fails.

## IV.

Finally, we turn to sovereign immunity. Pinehurst argued in district court that the Takings Clause abrogated sovereign immunity such that their takings claims against the city and state were tenable. The district court disagreed, holding that sovereign immunity bars all of Pinehurst's due process and takings claims against the state defendants, except to the extent they sought prospective relief against Commissioner Visnauskas in her official capacity.

On appeal, Appellants do not challenge the district court's determination that sovereign immunity bars their due process claims against the State and the New York Division of Housing and Community Renewal ("DHCR"). They challenge only the court's holding that sovereign immunity bars all their takings claims against the state defendants. We see no reason to disturb the district court's conclusions. Without a State's express waiver or an act by Congress under Section

5 of the Fourteenth Amendment, the Eleventh Amendment bars federal courts from adjudicating claims against a State, as well as its agencies and agents. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment's so-called "jurisdictional bar" applies "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The only exception exists for claims for prospective relief against state officials in their official capacities. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908). The district court correctly held that sovereign immunity barred Plaintiffs-Appellants' takings claims against the State and DHCR, as well as the claims against Commissioner Visnauskas to the extent they sought monetary relief. We have previously rejected the argument that the Takings Clause abrogates sovereign immunity. *See Morabito v. New York*, 803 F. App'x 463, 465 (2d Cir. 2020). This decision accords with the overwhelming weight of authority among the circuits, which have consistently held that sovereign immunity trumps the Takings Clause where, as here, the state provides its own remedy for an alleged violation.[7] Accordingly, we affirm the district court's holding with respect to Pinehurst's sovereign immunity argument.

---

[7] *See Hutto v. South Carolina Ret. Sys.*, 773 F.3d 536, 552 (4th Cir. 2014) (holding "that the Eleventh Amendment bars Fifth Amendment taking claims against States in federal court when the State's courts remain open to adjudicate such claims"); *Bay Point Props., Inc. v.*

## CONCLUSION

For these reasons, we affirm the judgment of the district court.

---

*Mississippi Transp. Comm'n*, 937 F.3d 454, 456–57 (5th Cir. 2019) (same); *Ladd v. Marchbanks*, 971 F.3d 574, 579–80 (6th Cir. 2020) (same); *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008) (same); *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1213-14 (10th Cir. 2019) (same); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (same); *see also Citadel Corp. v. Puerto Rico Highway Auth.*, 695 F.2d 31, 34 (1st Cir. 1982) (holding that federal courts may not award monetary relief for a State taking); *Garrett v. Illinois*, 612 F.2d 1038, 1040 (7th Cir. 1980) (same).